**Donald W. JOHNSON, Plaintiff,**

v.

**Emmet J. CUSHING and the Minnesota Department of Economic Security, Defendants.**

Civ. No. 4–78–327.

United States District Court, D. Minnesota, Fourth Division.

Jan. 17, 1980.

Gordon C. Moosbrugger, Moosbrugger & Murray, St. Paul, Minn., for plaintiff.

Frank W. Levin and Barbara Lindsey Sims, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM OPINION and ORDER

MILES W. LORD, District Judge.

### I. FACTS

Donald Johnson was a field auditor for the Minnesota Department of Economic Security. In May of 1976, Johnson informed his supervisor that he was considering becoming a candidate for the Minnesota House of Representatives. His supervisor responded to plaintiff in a memo stating

that a leave of absence to run for political office could not be granted. On July 7, 1976, plaintiff submitted a written request for a leave of absence without pay and at the same time filed an affidavit of candidacy. Plaintiff subsequently was sent two letters from Department officials denying his request for a leave of absence to run for a partisan political office.

Plaintiff did not report for work from July 7 to August 3. During this time he was actively campaigning for nomination in his district race. On July 20, plaintiff was sent a letter by the department's personnel director informing him that, because his leave was unauthorized, if he did not return to work by July 23, the department would assume he had resigned. Plaintiff was notified subsequently of the department's intention to dismiss him. On August 24, 1976, plaintiff was informed of his dismissal from employment.

Plaintiff lost the primary and requested reinstatement at the department. His request was denied. On appeal to the Minnesota Personnel Board, the Board ordered that plaintiff be reinstated to his position on January 13, 1977, but without back pay.

Plaintiff has brought this suit for back pay and damages under 42 U.S.C. § 1983 against the Department of Economic Security and the Commissioner of the Department, Emmet J. Cushing.

Defendants filed a motion for summary judgment alleging:

(1) plaintiff has failed to state a claim upon which relief can be granted;

(2) the Eleventh Amendment to the United States Constitution bars plaintiff's cause of action against defendants; and defendant Cushing's actions constitute a good faith reasonable exercise of administrative discretion and as a matter of law cannot be held to violate § 1983; and

(3) plaintiff's claims are estopped as untimely.

## II. DISCUSSION

The standard by which defendants' motion is to be judged is stated in *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976). In deciding on a motion for summary judgment, the court articulated the following standard:

> To obtain a summary judgment, the movant must demonstrate the absence of any genuine issue of material fact and the evidence submitted to the court "must be viewed in the light most favorable to the opposing party."

538 F.2d at 184.

It is under this standard that the Court addresses defendants' motion.

(1) *Plaintiff States a Claim Under 42 U.S.C. § 1983 For Which Relief Can Be Granted*

Defendants present the question of whether plaintiff's cause of action fails because it does not state a claim upon which relief can be granted. It appears that plaintiff's cause of action is brought under 42 U.S.C. § 1983 (1976).[1] This section states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

Case law has established several elements necessary for a suit under § 1983: (1) the defendants must act under color of state law;[2] (2) defendants' actions must be

---

1. The plaintiff pleads jurisdiction under 42 U.S.C. § 1983 (1976). This is not a jurisdictional statute; it is rather a substantive statute. It would appear, however, that jurisdiction is proper under 28 U.S.C. § 1343 (1976).

2. *Monroe v. Pape*, 365 U.S. 167, 184–87, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

intentional;[3] and (3) the defendants' actions must cause the deprivation of plaintiff's rights.[4]

A defendant in a suit under § 1983 acts "under color of state law" when he acts within the authority of his office.[5] *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Defendant Cushing was acting pursuant to the authority given him by Minn.Stat. § 268.12; this statute established the Department and granted powers to the Commissioner.

The second element necessary under § 1983 is that the defendants act intentionally. The Court finds that this element has been satisfied in the instant case.

The third element requires that defendants' actions cause the deprivation of plaintiff's rights. In the instant case, the causal link between the defendants' acts and plaintiff's deprivation is obvious.

Defendants argue that the Hatch Act, 5 U.S.C. § 1501 (1976), effectively prohibits plaintiff from running for any partisan political office, and that it applies to federal employees and to state and local officers or employees "whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency." 5 U.S.C. § 1501(4) (1976). The Minnesota Department of Economic Security receives part of its support from the federal government and, therefore, the Act would seem to apply.

This Court determines that the Hatch Act, while it applies to persons presently employed by the State Department of Economic Security, does not apply to persons who have been granted leaves of absence, or who have a statutory right to secure upon demand leaves of absence from the Department for the purpose of running for partisan political office.

Defendants further argue that plaintiff had no right to a leave of absence from his job. Defendants reason that Minn.Stat. § 268.12 Subd. 5(2) controls on this issue, and that this section does not provide for leaves of absence. At the time of the alleged deprivation, the operative language of Minn.Stat. § 268.12 Subd. 5(2) provided:

> No officer or employee engaged in the administration of these sections shall use his official authority to influence for the purpose of interfering with an election or affecting the results thereof. No person engaged in the administration of these sections who holds a position in the state classified service pursuant to provisions contained in the state civil service act, while retaining the right to vote as he pleases and to express privately his opinion on all political subjects, shall take an active part in political management or campaigns . . . .[6]

However, Minnesota also has a state-wide civil service system, and plaintiff is regulated by that civil service system. Employees in Minnesota's executive branch are governed by the state-wide civil service program outlined in Chapter 43 of the Minnesota Statutes and the Rules enacted pursuant to Chapter 43. Minn.Stat. § 43.28 specifically provides for leaves of absence for classified state employees subject to the state-wide civil service code. At the time this controversy arose, § 43.28 provided in pertinent part:

> Except as herein provided, any officer or employee in the state classified service shall:
>
> .        .        .        .        .

---

**3.** Comment, 12 *Creighton L.Rev.* 1105, 1110–11 (1979). *See, Jenkins v. Averett*, 424 F.2d 1228, 1232–33 (4th Cir. 1970). *See also, Russ v. Ratliff*, 538 F.2d 799 (8th Cir. 1976).

**4.** *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**5.** The Court has further ruled that it is immaterial whether the defendants' conduct is legal or illegal as a matter of state law. *McNeese v.* *Board of Educ.*, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

**6.** This language is no longer in the statute. In 1977, the Minnesota legislature amended § 268.12, subd. 5(2), deleting the operative language upon which defendants rely. Today there is no question but that plaintiff would be entitled to a leave of absence to run for partisan political office without fear of reprisal.

(3) Upon his request, be granted leave of absence upon becoming a candidate, or during the course of such candidacy, for any elected public office;

Minn.Stat. § 43.28 Subd. 2(3).

At first blush, Minn.Stat. §§ 268.12 subd. 5(2) and 43.28 seem to be in conflict. Upon reflection, however, it seems apparent that no conflict exists. Section 268.12 subd. 5(2) does not operate to deny plaintiff an opportunity to secure a leave of absence to run for political office. That section stated that no person who "holds a position in the state classified service pursuant to provisions contained in the state civil service act . . shall take an active part in political management or campaigns." *Id.*

Section 43.28 provides that persons who currently hold positions in the state classified service may secure leaves of absence in order that they may run for political office. It seems apparent that this section operates to temporarily suspend persons from the classified service in such a way that § 268.-12 subd. 5(2)(a) would not apply to them.

At the time plaintiff requested a leave of absence, he was a classified employee of the state's executive department and had a statutory right to a leave of absence to run for partisan political office.

It seems clear that Mr. Johnson had a right to secure a leave of absence from his position with the Department of Economic Security. However, what is not clear is whether Mr. Johnson was deprived of any federal constitutional or statutory rights.

The final necessary element in a § 1983 case is that the plaintiff must be deprived of a federal right. The nature of the right, privilege or immunity protected by § 1983 which was allegedly violated by defendants is not wholly clear from plaintiff's complaint. However, two rights specifically mentioned in plaintiff's memorandum in opposition to defendants' present motion are the right to employment and the right to candidacy.

A. The Right to Employment

■ A person may have a protected property interest in public employment if there is a contractual or statutory guarantee of continued employment, except for removal for cause. *Arnett v. Kennedy*, 416 U.S. 134, 151–2, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Nyhus v. Civil Service Board*, 305 Minn. 184, 189–90, 232 N.W.2d 779 (1975). As a nonprobationary public employee, plaintiff had such a property interest in his job. Minn. Stat. § 43.09 subd. 4 (1979).

■ *Roth* and *Arnett, supra* hold that certain procedural rights must be provided by the state prior to termination of plaintiff's employment. It would appear that Mr. Johnson received all the procedural due process required by the Constitution. It is the *procedure* that is constitutionally demanded; the right to *employment* may well be statutorily protected under state law, but is not a *federal* right created under the Constitution and laws of the United States.

B. The Right to Candidacy

■ Plaintiff also asserts a right to run for office. This Court is asked to determine whether there is a constitutional right to run for political office; it is not asked to determine the importance of the right. Therefore, this Court makes no determination one way or the other regarding whether the right to run is fundamental; fundamental or not, it is a federal Constitutional right.

The First Circuit Court of Appeals, in *Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973), reasoned that the interest of the individual in running for public office is an interest protected by the First Amendment. The Court therein stated:

The right to run for public office touches on two fundamental freedoms: freedom of individual expression and freedom of association. Freedom of expression guarantees to the individual the opportunity to write a letter to the local newspaper, speak out in a public park, distribute handbills advocating radical reform, or picket an official building to seek redress of grievances. All of these activities are

protected by the First Amendment if done in a manner consistent with a narrowly defined concept of public order and safety. . . . The choice of means will likely depend on the amount of time and energy the individual wishes to expend and on his perception as to the most effective method of projecting his message to the public. But interest and commitment are evolving phenomena. What is an effective means for protest at one point in time may not seem so effective at a later date. The dilettante who participates in a picket line may decide to devote additional time and resources to his expressive activity. As his commitment increases, the means of effective expression changes, but the expressive quality remains constant. He may decide to lead the picket line, or to publish the newspaper. *At one point in time he may decide that the most effective way to give expression to his views and to get the attention of an appropriate audience is to become a candidate for public office —means generally considered among the most appropriate for those desiring to effect change in our governmental systems.* He may seek to become a candidate by filing in a general election as an independent or by seeking the nomination of a political party. And in the latter instance, the individual's expressive activity has two dimensions: besides urging

that his views be the views of the elected public official, he is also attempting to become a spokesman for a political party whose substantive program extends beyond the particular office in question. But [the defendant city] has said that a certain type of its citizenry, the public employee, may not become a candidate and may not engage in any campaign activity that promotes himself as a candidate for public office. *Thus, the city has stifled what may be the most important expression an individual can summon, namely that which he would be willing to effectuate, by means of concrete public action, were he to be selected by the voters.*[7]

*Id.* at 195–96 (emphasis added).

Judge Hunter, in *Antonio v. Kirkpatrick,* 453 F.Supp. 1161 (W.D.Mo.1978), noted that although the right to run for political office may not be as important or fundamental as the right to vote, it is still a protected federal right.[8] *Id.* at 1164, *aff'd. Antonio v. Kirkpatrick,* 579 F.2d 1147, 1149–50 (8th Cir. 1978). *See also, Howlett v. Salish & Kootenai Tribes,* 529 F.2d 233, 243–43 (9th Cir. 1976); *Mancuso v. Taft,* 476 F.2d 187, 195–96 (1st Cir. 1973).

After defendant Cushing told plaintiff that his application for a leave of absence would be denied, and his employment terminated, if he were to seek political office,

---

**7.** The *Mancuso* Court further noted that:

In *Williams v. Rhodes* [393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)], *supra,* the Court held that First Amendment rights were "fundamental" for purposes of equal protection . . . .

As noted above, the Supreme Court in *Bullock* [*v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972)] stated that only candidate restrictions with substantial impact on voters would receive the strict review appropriate for legislation which affects the right to vote. We need not decide whether a similar threshold determination is required with regard to an individual's right to run for office, since we find that the provision here at issue imposes a severe hurdle to appellee's candidacy and hence to his exercise of his First Amendment rights. As noted above, it does not merely present the would-be candidate with minor requirements before being entitled to a place on the ballot; it forces the public em-

ployee to make an all-or-nothing choice between his job and his candidacy.

476 F.2d at 195, n. 11 (citations omitted).

**8.** Judge Hunter's ruling was affirmed by the Court of Appeals in *Antonio v. Kirkpatrick,* 579 F.2d 1147 (8th Cir. 1978). *Kirkpatrick* concerned the constitutionality of a ten year residency requirement prior to qualifying as a candidate for the office of State Auditor. The District Court ruled that the residency requirement infringed several constitutionally protected associational rights—"travel, voting, *and the heart of government, candidacy.*" 453 F.Supp. at 1165 (emphasis added).

The Court of Appeals affirmed the District Court. It applied a more lenient standard of review than had Judge Hunter; nevertheless, even under the "rational basis" standard, candidacy is still a constitutionally protected associational interest. 579 F.2d at 1149–50.

plaintiff attempted to retract his candidacy, and he did not actively campaign as a candidate. Defendant's notice to plaintiff that his employment would be terminated also caused plaintiff to write to the Minnesota Secretary of State asking to have his name removed from the ballot, and when that request was denied, plaintiff appeared publicly in his district asking voters not to vote for him. Therefore, even though plaintiff's name appeared on the ballot, his candidacy was devitalized and his right to run was chilled by defendants' actions.

On the basis of the foregoing, it seems clear that Mr. Johnson has properly stated a claim for relief under § 1983. Therefore, defendants' motion for summary judgment for failure to state a claim is denied.

(2) *Eleventh Amendment and Related Immunities*

The second and third issues raised by defendants concern whether Congress through enactment of 42 U.S.C. § 1983, abrogated the Eleventh Amendment guarantee of states' immunity to suit in federal court, and whether defendant Cushing, as a state official falls within the immunity granted states because of his good faith, reasonable exercise of administrative discretion.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U. S. Constitution, Amendment XI.

The Eleventh Amendment has generally been interpreted by the Courts as constitut-ing a bar to suits against states in federal courts. The exception to this general rule concerns the situation where a state expressly consents to suit. *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883). The Supreme Court has also indicated that a state may lose its sovereign immunity under the doctrine of constructive waiver. *Parden v. Terminal Ry.*, 377 U.S. 184, 190–92, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). *See also, Tribe, American Constitutional Law*, § 3–36 at 134–38 (Foundation Press 1978); Field, *The Eleventh Amendment and Other Immunity Doctrines: Congressional Imposition Upon the States*, 126 *U.Pa.L.Rev.* 1203, 1227–31 (1978). In particular, the United States Supreme Court has found an implied waiver of immunity when an action is brought under statutes enacted pursuant to the enforcement clause of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Court in *Fitzpatrick, supra*, reasoned:

In the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin."

427 U.S. at 447–8, 96 S.Ct. at 2667.

Other circumstances in which constructive waiver of immunity may be found are not so specifically delineated; however, it would appear to turn on the clear and specific language of the particular piece of federal legislation at issue.[9]

9. Professor Field has reasoned that the Eleventh Amendment does not constrain Congress when it acts "to enforce by appropriate legislation, the provisions of the [Fourteenth Amendment]." *Sovereign Immunity*, 126 *U.Pa.L.Rev.* 1203, 1231 (1978). This language would suggest that any statute enacted pursuant to § 5 of the Fourteenth Amendment constructively waives states' sovereign immunity.

It would appear, however, that the more appropriate method of analysis is to scrutinize the "clear language" of the statute in issue, and determine whether Congress in fact intended in each instance to constructively waive states' immunity. Professor Tribe has indicated that this would constitute a more appropriate analysis in this manner:

[T]he amenability of states to suit must be specifically addressed by federal legislation, and Congress must make its intention to treat states like private parties unmistakably clear. This policy of clear statement had

Recently, the United States Supreme Court in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), held that § 1983, although enacted pursuant to § 5 of the Fourteenth Amendment, does not contain language that indicates states' consent to suit. The Court in *Quern* stated:

> [N]either logic, the circumstances surrounding the adoption of the Fourteenth Amendment, nor the legislative history of the 1871 Act compel, or even warrant, a leap from this proposition [that the Act ceded many important powers to the federal government] to the conclusion that Congress intended by the general language of the Act to overturn the constitutionally guaranteed immunity of the several States. . . .

440 U.S. at 342, 99 S.Ct. at 1146.

■ Based on the recent holding in *Quern, supra*, this Court finds that § 1983 does not abrogate states' immunity from suit in federal court. This Court must, therefore, grant defendant's motion for summary judgment as to the state of Minnesota, on the ground that the Eleventh Amendment bars plaintiff's suit against the Department in federal court.

■ This Court must still determine whether the Eleventh Amendment bars suit against defendant Emmet Cushing. Mr. Cushing was sued in his individual capacity, as the Commissioner of the defendant Department at the time of this action. The Court finds that the Eleventh Amendment does not bar this portion of plaintiff's claim

for relief. *See, Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).[10]

■ Defendant Cushing further urges that the Court must grant summary judgment in his favor because he was acting in good faith when he discharged the plaintiff.

The immunity standard governing state officials acting in their official capacities was articulated by the Court in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court therein stated:

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief that affords a basis for qualified immunity of executive officers . . . .

*Id.* at 247–48, 94 S.Ct. at 1692.

Defendant Cushing argues that his actions are such that he falls within this immunity as a matter of law. However, this Court agrees with the reasoning of the Fifth Circuit in *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976), that "[t]he qualified immunity or good-faith defense which [Scheuer] describe[s] is one which turns on the circumstances and motivations of the

---

been rejected by the *Parden* majority, but Justice White's formulation of the policy in his *Parden* dissent eventually prevailed: It should not be easily inferred that Congress, in legislating pursuant to one article of the Constitution, intended to effect an automatic and compulsory waiver of rights arising under another. Only when Congress has clearly considered the problem and expressly declared that any State which undertakes given regulable conduct will be deemed thereby to have waived its immunity should courts disallow the invocation of this defense. *Tribe, American Constitutional Law*, § 3–36 at 136–37 (1978).

**10.** *Scheuer* arose out of the Kent State shootings. Plaintiffs in this case sought monetary

relief from certain state executive officers under § 1983 for their part in the Kent State incident. The District Court dismissed plaintiff's claim on Eleventh Amendment grounds; the dismissal was affirmed by the Court of Appeals. The Supreme Court reversed, reasoning:

> [W]hile it is clear that the doctrine of *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] is of no aid to a plaintiff seeking damages from the public treasury, . . . damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.

416 U.S. at 238, 94 S.Ct. at 1687.

defendant, and it therefore ordinarily requires some evidentiary showing. These doctrines would rarely, if ever, justify dismissing a complaint in response to a bare Rule 12(b)(6) motion." 537 F.2d at 832. *See also, Pfizer Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976). The reasoning in *Sims, supra,* applies with equal force on a motion for summary judgment. Accordingly, defendant's motion for summary judgment based upon grounds of good faith exercise of executive discretion is denied.

(3) *Timely Review of Administrative Action*

█ It is clear that in suits arising under § 1983, it is not necessary that plaintiff exhaust state judicial remedies. *Hobbs v. Thompson*, 448 F.2d 456, 461 (5th Cir. 1971). Therefore, plaintiff did not err when he sought relief in the federal courts after failing to secure such from the Minnesota Personnel Board. Likewise, plaintiff's failure to seek relief from this Court within 30 days after the determination of the Personnel Board had issued does not raise a bar to Mr. Johnson's requested relief.

## III. ORDER

Accordingly, it is ORDERED:

(1) Plaintiff's claim against the Minnesota Department of Economic Security is in all things dismissed;

(2) In all other respects, defendants' motion for summary judgment is denied.