**STATE OF MINNESOTA, DEPARTMENT OF JOBS AND TRAINING, Plaintiff-Petitioner,**

v.

**UNITED STATES MERIT SYSTEMS PROTECTION BOARD, Defendant.**

Civ. No. 4–87–284.

United States District Court,
D. Minnesota,
Fourth Division.

June 23, 1987.

Hubert H. Humphrey, III, Atty. Gen., for the State of Minn. by Rebecca H. Hamblin, Sp. Asst. Atty. Gen., St. Paul, for plaintiff-petitioner.

Martha B. Schneider, U.S. Merit Systems Protection Bd., Office of Gen. Counsel, Washington, D.C., for defendant.

1. Formerly known as the Minnesota Depart-

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment.

FACTS

Petitioner is the State of Minnesota, Department of Jobs and Training (DJT). Respondent is the United States Merit Systems Protection Board (MSPB). Petitioner is appealing the February 27, 1987 opinion and order in the case of *Special Counsel, Petitioner v. Thomas J. Kehoe, Respondent,* 33 M.S.P.R. 56. The MSPB found in that case that Kehoe, an employee of respondent Minnesota Department of Jobs and Training,[1] had willfully violated the Hatch Political Activities Act (Hatch Act). The MSPB ordered that Kehoe be removed from employment with DJT.

The history of this case is as follows. Thomas J. Kehoe is a DJT employee whose position with DJT is, and was during the time period in question, federally funded. In 1982, Kehoe ran for the Minnesota Legislature and lost. At that time, he was on a state-approved leave of absence from his federally-funded job with the State of Minnesota.

Although no action was taken by the Office of the Special Counsel (OSC) of the MSPB at that time, Kehoe was warned by the OSC that it considered his activities subject to the Hatch Act, notwithstanding the fact that he was on a state-approved leave of absence at the time he ran for partisan political office.

In 1984, Kehoe again ran for the Minnesota Legislature. Petitioner DJT determined that the state of Minnesota was obligated under Minnesota Statute to grant state employees such as Kehoe leave to pursue political office. Minn.Stat. § 43.28. Minn.Stat. § 43.28 states:

> Except as herein provided any officer or employee in the state classified service shall be eligible for leave of absence from the service not to exceed one year

ment of Economic Security (DES).

upon becoming a candidate for public office.

However, the Federal Hatch Political Activities Act (Hatch Act) specifically states that:

A State or local officer or employee may not—

. . . .

(3) be a candidate for elective office.

5 U.S.C. § 1502(a)(3). The MSPB found that since Kehoe had run as an Independent Republican Party candidate for Minnesota State Representative in 1984 while employed in a position principally funded by federal moneys, he had violated the Hatch Act. The MSPB further found that Kehoe's violation of the Hatch Act was of such scope and effect as to warrant removal of Kehoe from his position with DJT, pursuant to 5 U.S.C. § 1505. The MSPB then ordered that Kehoe be removed from his position within thirty days of the MSPB's order. DJT refused to comply with the MSPB order, and this action ensued.

The MSPB has consistently held that Minn.Stat. § 43.28 is not in conflict with the Hatch Act. The MSPB has made a distinction between state employees connected with federally-funded programs, to whom the Hatch Act applies, and state employees who are strictly state-funded program employees, to whom the Hatch Act does not apply. *See, e.g., Special Counsel v. Daniel,* 15 M.S.P.R. 636 (1983).

However, one court in this district has considered the conflict between Minn.Stat. § 43.28 and the Hatch Act and concluded that:

the Hatch Act, while it applies to persons presently employed by the State Department of Economic Security [now known as DJT], does not apply to persons who have been granted leaves of absence, or who have a statutory right to secure upon demand leaves of absence from the Department for the purpose of running for partisan political office.

*Johnson v. Cushing,* 483 F.Supp. 608, 611 (D.Minn.1980). Petitioner contends that *Johnson* is controlling law, and that it therefore cannot comply with the MSPB order. Petitioner had in fact granted Kehoe a leave of absence to run for political office, but had warned him that "although the State of Minnesota was obligated under Minnesota statute to grant him leave to pursue political office, the State had no control over what actions the Board [MSPB] might take pursuant to the Hatch Act." *Special Counsel v. Kehoe,* 33 M.S.P.R. at 59.

On March 26, 1987, counsel for petitioner wrote to the MSPB requesting reconsideration and a stay of the opinion and order. On March 31, 1987, the office of the special counsel filed with the MSPB a request for an order directing that federal moneys be withheld from DJT pursuant to 5 U.S.C. § 1506(a), based on the fact that DJT had not removed Kehoe from its rolls as ordered by the MSPB. The MSPB denied petitioner's request for reconsideration and for a stay on May 18, 1987. Petitioner also requested that the Court stay the MSPB's order and any further proceedings or orders directing the withholding of federal funds from DJT. This request was denied by the Court. Order, CIVIL 4–87–284 (D.Minn. Apr. 29, 1987). The special counsel's request for a withholding of federal moneys from DJT is pending with the MSPB.

Both petitioner and respondent now move for summary judgment.

DISCUSSION

A party is not entitled to summary judgment unless the party can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *E.g., Hartford Accident & Indem-*

*nity Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144–45 (8th Cir.1984). The non-moving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Salinas v. School District of Kansas City*, 751 F.2d 288, 289 (8th Cir.1984).

The parties agree that there is no genuine issue of material fact in this case, and that the sole question before the Court is the resolution of the apparent conflict between Minn.Stat. § 43.28 as interpreted in *Johnson v. Cushing*, and the Hatch Act.

The standard of review for MSPB decisions issued pursuant to 5 U.S.C. § 1505 is set forth in 5 U.S.C. § 1508. That section provides that when the Court is reviewing a MSPB decision and order, the Court should affirm the MSPB's determination that a Hatch Act violation has occurred if the MSPB's determination is "in accordance with law." *State of Oklahoma v. U.S. Civil Service Commission*, 330 U.S. 127, 144, 67 S.Ct. 544, 554, 91 L.Ed. 794 (1947). In the case at bar, petitioner contends that the MSPB's decision is contrary to law because it is inconsistent with *Johnson v. Cushing*, 483 F.Supp. 608 (D.Minn. 1980). The MSPB acknowledges that its decision is contrary to *Johnson*, but it is the MSPB's position that *Johnson* was wrongly decided. In *Johnson*, which was an action under 42 U.S.C. § 1983, not under the Hatch Act, the court held that the Hatch Act does not apply to persons employed by the State Department of Economic Security who have been granted a leave of absence, or who have a statutory right under Minnesota law to a leave of absence for the purpose of running for partisan political office. 483 F.Supp. at 611. The court in *Johnson* did not find that its interpretation of Minn.Stat. § 43.28 was in conflict with the Hatch Act, but did not elaborate on the basis for this finding.

The MSPB disagrees with the holding of *Johnson*, arguing that the legislative history of the Hatch Act makes it clear that covered state employees are subject to the prohibitions of the Act regardless of leave status.

The legislative history of the Act does in fact support the MSPB's conclusion that a covered state employee on leave without pay is subject to the Act. The Hatch Act was first promulgated in 1939 to " 'prevent pernicious political activities' within the Federal work force," Opinion and Order at 9, *quoting* S.Rep.No. 221, 76th Cong., 1st Sess. 1, but was quickly extended in 1940 to cover officers and employees of state and local agencies "whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States...." *Id.* 9–10, *quoting* Act of July 19, 1940, c. 640, 54 Stat. 767. Section 15 of the Act as originally enacted in 1940 prohibited the same activities on the part of state and local employees as the Civil Service Commission had determined were prohibited for federal employees. Senator Hatch, the proponent of the bill, inserted in the record a summary of interpretations of the rules of the Commission as applied to the political activities of federal employees.[2] Included among these were the following:

1. Rule prohibits participation not only in national politics but also in State, county, and municipal politics.

2. Temporary employees, substitutes, and persons on furlough or leave of absence with or without pay are subject to the regulation.

*Id. quoting* 86th Cong.Rec. S2942–43 (daily ed. Mar. 15, 1940) (statement of Sen. Hatch).

An amendment was offered which would have excluded persons on leave without pay from the coverage of the statute, but the amendment was withdrawn at the re-

---

**2.** Prior to the enactment of the Civil Service Reform Act of 1979 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111, 5 U.S.C. § 1101 *et seq.*, which created the Board and the Office of Special Counsel, the Civil Service Commission was charged with enforcing the Hatch Act. Under the CSRA the Office of Special Counsel is responsible for prosecuting Hatch Act violations, 5 U.S.C. § 1206(e)(1)(B), (g)(1), and the Board is responsible for adjudicating Hatch Act cases brought by the Office of Special Counsel. 5 U.S.C. § 1207.

quest of Senator Hatch after another senator had expressed the following opinion:

> I am rather disappointed that the Senator from New Mexico [Senator Hatch] should accept this amendment.... I know of nothing which might involve more impure politics than for a man who occupies an executive position, who has under him a large number of employees, to take a leave of absence with the understanding that he is going to run for office, and then come back and again hold his office if he is defeated in the election. I am astounded that the Senator from New Mexico is willing to agree to the amendment.

*Id.* at 11–12, *quoting* 86 Cong.Rec. S2872 (daily ed. Mar. 14, 1940) (statement of Sen. Schwellenbach).

■ Thus, given the legislative history of the Hatch Act, the Court finds that a state or local officer or employee, as defined in 5 U.S.C. § 1501(4), who runs for public office in a partisan election, even if on approved leave without pay, is in violation of federal law.

Petitioner argues nonetheless that *Johnson* is the controlling law in this district, and that therefore the Court and the MSPB must apply the *Johnson* holding to cases arising in this district. However, the *Johnson* decision is not controlling over this Court, despite the fact that it was decided by a court in this district. *See Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir.1977); *Mueller v. Allen*, 514 F.Supp. 998, 1000 (D.Minn. 1981) (a court's decision is not binding upon courts of equal rank). *See generally* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* par. 0.402[1] at 16 and n. 21 (2d ed. 1984).

Therefore, the Court declines to follow the reasoning of *Johnson,* and finds that the Hatch Act does prohibit state employees working in federally-funded programs from taking leaves of absence to run for partisan political office.[3]

A remaining issue in this case, however, is whether the MSPB abused its discretion in ordering Kehoe dismissed from his job with DJT, and whether petitioner should be punished for its refusal to comply with the MSPB order by losing approximately $44,000 in federal funding.

■ Even though the Court finds that Kehoe violated the Hatch Act when he took a leave of absence and ran for partisan political office, in order for the MSPB's order to be lawful, the MSPB must have acted within its legitimate discretion in finding that Kehoe's violation was knowing and willful, and therefore was of such scope and effect as to warrant his removal from his job with DJT under 5 U.S.C. § 1505. Petitioner argues that even if Kehoe did violate the Hatch Act, the violation was not willful, and therefore the MSPB's order to remove Kehoe from his DJT job was an abuse of agency discretion.

The MSPB argues that its decision that removal was warranted was based upon thorough review of the case, and consideration of the numerous warnings the OSC and the DJT gave to Kehoe in 1982 and 1984, advising him that his running for partisan political office violated the Hatch Act. However, the petitioner argues that Kehoe and petitioner relied in good faith on the decision in *Johnson,* and that therefore, any violation of the Hatch Act that occurred was not willful. *See, e.g., Special Counsel v. Hayes,* 16 M.S.P.R. 166 (1983) (employee's violation did not warrant removal when he acted reasonably in good faith upon legal advice). Thus petitioner argues that the MSPB's order of removal was an abuse of discretion.

The facts of this case support petitioner's argument. On July 18, 1984 Kehoe submitted a request for a leave of absence without pay to the Minnesota Department of Employee Relations, to run for partisan political office. Its reply letter to Kehoe on July 25, 1984, the Department of Employee Relations informed him that, because of *Johnson* and Minn.Stat. § 43A.32,

---

**3.** The Court's decision would in no way prohibit state employees working in solely state-funded programs from taking leaves of absence to run for political office pursuant to Minn.Stat. § 43.-28.

subd. 2(c), his request for a leave of absence without pay to run for partisan political office was being granted. The letter then went on to "caution" Kehoe that the MSPB took a different position, namely that the Hatch Act applied to an employee such as Kehoe while on a leave of absence, and that the MSPB might take action to remove him from state employment. The letter also told Kehoe that the state could not control what the MSPB might attempt to do. *See,* letter of July 25, 1984 from Ellen Sampson, Assistant to the Commissioner, to Kehoe; Exh. P–15 in the hearing held in this matter on March 18, 1986.

Thus, Kehoe was faced with two conflicting interpretations of the Hatch Act as it applied to him. On one hand, the State of Minnesota believed that the law compelled it to grant Kehoe a leave of absence to run for political office, because Minn.Stat. § 43.28 and *Johnson* explicitly required that employees such as Kehoe be granted such leaves. On the other hand, Kehoe had been warned that he might be subject to federal action by the MSPB for the very action which the state claimed Kehoe had a right to take. Kehoe had two choices: he could either refrain from running for office, despite the fact that he had a state statutory right to do so and that the state had informed him that it was compelled by statute and court decision to give him a leave of absence to run for political office; or he could run for office on approved state leave, knowing he could still lose his job because of the position that the MSPB took on the matter. In light of these conflicting interpretations of the Hatch Act, it would be profoundly unfair to label Kehoe's decision to run for political office a "willful" violation of the Hatch Act. *See Special Counsel v. Yoho,* 15 M.S.P.R. 409 (1983) (MSPB did not order removal where state law was subject to different interpretations). Therefore, the Court concludes that Kehoe's actions were not willful, and he should not be removed from his job with DJT. Moreover, the actions of DJT in this case clearly show that petitioner had a good faith belief that it was bound by *Johnson* to grant Kehoe's leave of absence request so that he could run for partisan

political office, even though DJT knew that the MSPB would claim that this violated the Hatch Act.

The May, 1984 edition of the Minnesota Department of Economic Security *Policy and Procedural Manual* contained the following language, not previously contained in the August, 1983 edition of the manual:

> NOTE: the Minnesota Attorney General's Office has informed the Department of Economic Security that "the federal agency responsible for enforcing the federal Hatch Act, namely the U.S. Merit Systems Protection Board, has taken the position that the Hatch Act does apply to an employee while on a leave of absence from employment with the Minnesota Department of Economic Security. Any employee who applies for the leave set forth in 43A.32, subd. 2(c) should be advised of the position of the U.S. Merit Systems Protection Board and that said agency may possibly take action as earlier threatened to remove any employee from state employment who becomes a candidate. *Under the present law in Johnson v. Cushing, the state of Minnesota is obligated to grant the leave even though the Office of the Special Counsel of the U.S. Merit Systems Protection Board has warned that it will take action against any employee who violates the Hatch Act whether or not that employee is on a leave of absence required by 43A.32.*

(Emphasis added.) *See* August, 1983 and May, 1984 Policy and Procedures Manual of the Minnesota Department of Economic Security Exh. P–6, P–12, Administrative Hearing (March 1986). Thus, petitioner was acting in good faith, taking all possible steps to comply with the prevailing Minnesota law while warning employees of potential federal action under the Hatch Act.

In sum, the Court concludes that the Hatch Act does prohibit state employees working in federally-funded programs from taking leaves of absence to run for partisan political office under Minn.Stat. § 43.-28. However, the Court further concludes that the actions of petitioner and its employee Thomas Kehoe were taken in good

faith, and were not willful or knowing violations of the Hatch Act, and that therefore the MSPB's order to remove Kehoe from his employment at DJT, and any future order to withhold the approximately $44,-000 in federal funding to DJT, are an abuse of discretion. Accordingly, the Court's order as to the applicability of the Hatch Act to state employees working in federally-funded programs shall have prospective effect only. The Court shall order the Kehoe case remanded to the MSPB for an opinion and order consistent with the Court's finding that the actions of petitioner and its employer Kehoe were neither willful nor knowing violations of the Hatch Act.

Accordingly, based on the foregoing, and upon all the records, files and proceedings herein,

IT IS ORDERED that:

1. the Hatch Act prohibits state employees working in federally-funded programs from taking leaves of absence to run for partisan political office;

2. Minnesota Statutes Section 43.28, which allows state employees to take leaves to run for partisan political office, applies only to State employees in state-funded programs;

3. paragraphs 1 and 2 of this order shall have prospective effect only from the date of this order;

4. the Kehoe case itself shall be remanded to the United States Merit Systems Protection Board for an opinion and order consistent with the Court's finding that neither petitioner nor Kehoe willfully or knowingly violated the Hatch Act or otherwise acted in bad faith.

LET JUDGMENT BE ENTERED ACCORDINGLY.