**STATE OF MINNESOTA, DEPART-MENT OF JOBS AND TRAINING, Appellees,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Appellant.**

No. 87–5346.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1988.

Decided Oct. 4, 1988.

Rehearing En Banc Granted and Opinion Vacated Nov. 16, 1988.

Martha B. Schneider, Washington, D.C., for appellant.

Rebecca H. Hamblin, St. Paul, Minn., for appellees.

Before ARNOLD, Circuit Judge, and ROSS and TIMBERS,* Senior Circuit Judges.

ROSS, Senior Circuit Judge.

The Merit Systems Protection Board (the Board) appeals from the district court's determination that the Board abused its discretion by ordering the removal of Thomas J. Kehoe, upon finding that Kehoe willfully violated the Hatch Political Activities Act (Hatch Act), 5 U.S.C. §§ 1501–1508, by running for partisan political office while a state employee in a federally funded program. While agreeing with the Board that Kehoe's political campaign violated the Hatch Act, the district court ruled that such violation was not willful and therefore not justification for his removal from employment. After a careful review of the record and the briefs and arguments of the parties we reverse the decision of the district court.

BACKGROUND

In 1982, while an employee of the Minnesota Department of Economic Security (DES), Thomas Kehoe ran for election to the Minnesota State Legislature and lost.

* WILLIAM H. TIMBERS, United States Senior Circuit Judge for the Second Circuit, sitting by designation.

During his candidacy, Kehoe was on approved leave of absence from his state position of employment.

In August of 1982, the Director of DES informed the Office of the Special Counsel (OSC)[1] that Kehoe had filed to run for election as a partisan candidate. On September 3, 1982, OSC offically warned Kehoe that it considered his political activities subject to the Hatch Act, notwithstanding the fact that he was on a state-approved leave of absence. Kehoe, however, maintained that the Hatch Act did not apply to him because of a federal district court ruling by Judge Miles Lord in *Johnson v. Cushing*, 483 F.Supp. 608 (D.Minn.1980), which held the Hatch Act inapplicable to state employees on approved leave while running for political office.

On October 21, 1983, the OSC sent Kehoe a letter informing him that, due to his apparent confusion about the district court's ruling in *Johnson*, OSC had decided to exercise leniency and not seek disciplinary action against him. However, with strong language, the OSC warned Kehoe that contrary to the language in *Johnson*, the Hatch Act does apply to an employee while on leave of absence and any future political activity proscribed by the Act would be construed as a willful violation and result in Kehoe's removal from state employment.

In 1984, Kehoe again ran for a seat in the Minnesota Legislature. Pursuant to Minnesota Statute § 43A.32, subd. 2(c) (1984),[2] which allows state employees to take leaves of absence to run for partisan political office, the Department of Jobs and Training (DJT) (successor agency to the DES) again granted Kehoe's request for leave in order to pursue a seat in the state legislature.

On June 18, 1984, OSC advised Kehoe that his candidacy while he was still a state employee would violate the Hatch Act. To buttress its warning, OSC supplied Kehoe with a copy of the Board's opinion in *Special Counsel v. Daniel*, 15 M.S.P.R. 636 (1983) rejecting the validity of the *Johnson* holding. On the same day, Kehoe submitted an application with DJT requesting a leave during the campaign. On July 25, 1984, the Minnesota Department of Employee Relations cautioned Kehoe that although the State of Minnesota was obligated under Minnesota statute to grant him leave to pursue political office, the state had no control over what actions the Board might take pursuant to the Hatch Act.

Sometime before Kehoe announced his candidacy, DJT amended its Policy and Procedure Manual to advise employees that the Board had taken the position that the Hatch Act applied to an employee while on a leave of absence from employment with the DJT. Moreover, the Manual advised employees that OSC has warned that it would prosecute Hatch Act violations, which could result in removal from state employment, notwithstanding any obligation DJT had under Minnesota law to grant leaves of absence to pursue political office.

Despite all warnings, Kehoe took a leave of absence and unsuccessfully ran as a candidate in the 1984 elections. Kehoe returned to his position with DJT following his defeat, and on February 20, 1985, DJT advised OSC that Kehoe had been a partisan candidate for political office in 1984. OSC filed the complaint in the instant action on November 22, 1985, charging that Kehoe had been a candidate for a partisan political office while principally employed by a state agency with federally funded programs in violation of the Hatch Act. On July 21, 1986, after a hearing on the merits, the administrative law judge (ALJ) issued a recommended decision concluding that Kehoe had willfully and knowingly violated the Hatch Act and that his removal

---

1. The Office of the Special Counsel is the agency which investigates and prosecutes alleged Hatch Act violations.

2. Minn.Stat. § 43A.32, subd. 2(c) (1984) states:
   Subd. 2. Leaves of absence for elected public officials, candidates. Except as herein provided any officer or employee in the classified service shall:
   (c) Upon request, be granted leave of absence upon becoming a candidate, or during the course of candidacy, for any elected public office.

from employment was warranted. On February 27, 1987, the Board issued an opinion and order adopting the ALJ's recommended decision and ordered that Kehoe be removed from his position within thirty days of the Board's order. DJT refused to comply with the Board's order and this action ensued.

On March 30, 1987, DJT filed a petition for review of the Board's decision in the United States District Court for the District of Minnesota. On June 23, 1987, the district court issued a decision reversing the Board's ruling in part and remanding the case to the Board for the issuance of an opinion and order consistent with the court's finding that neither DJT nor Kehoe willfully or knowingly violated the Hatch Act. 666 F.Supp. 1305 (D.Minn.1987). This appeal followed.

DISCUSSION

Under 5 U.S.C. § 1505 (1982) of the Hatch Act, the Board has plenary jurisdiction to determine whether the Hatch Act has been violated and, after a hearing, the Board is authorized to determine whether the violation warrants removal from employment. 5 U.S.C. § 1505(2). The Board's determination may be reversed only when the reviewing court determines that the Board abused its discretion. *Oklahoma v. United States Civil Service Comm'n*, 330 U.S. 127, 145–46, 67 S.Ct. 544, 554–55, 91 L.Ed. 794 (1947).

On cross motions for summary judgment the district court in the instant case found that the Board's decision to remove Kehoe was not in accordance with the law and accordingly reversed the Board's removal order. In reviewing this decision on appeal, this court must render an independent decision on the basis of the same administrative record and employ the same standard of review as that before the district court. *First Nat'l Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1374 (8th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). This court must determine whether there has been an abuse of discretion without any presumption that the decision of the district court is correct. *Id.* As long as there was a reasonable

basis for the Board's conclusion that removal was warranted, the district court was required to defer to that conclusion as being within the discretion of the Board. Only if the Board's conclusion had no reasonable basis would it constitute an abuse of discretion.

Applying these principles, we now turn to the arguments raised by the parties on appeal. The DJT's primary argument is that Kehoe's removal was unwarranted because Kehoe did not willfully violate the Hatch Act. Instead, the DJT argues that Kehoe reasonably relied on the district court's ruling in *Johnson v. Cushing* that the Hatch Act does not apply to state employees who have been granted leaves of absence.

Notwithstanding the court's broadly stated ruling relating to the Hatch Act, *Johnson v. Cushing* was a civil rights case under 42 U.S.C. § 1983 and not a Hatch Act adjudication. In *Johnson*, a public employee brought a civil rights action against the Minnesota Department of Economic Security and its Commissioner claiming that the DES improperly failed to grant his request for leave of absence from his job in order to seek political office. The Board was not a party to the action. Furthermore, Johnson claimed that his civil rights were violated when the DES removed him from employment when he actively campaigned for political office, notwithstanding his failure to secure an approved leave of absence. The district court, on a motion by the DES for summary judgment alleging failure to state a claim, rejected DES's argument that the Hatch Act effectively prohibited Johnson from running for any partisan political office. The court determined without explanation that "the Hatch Act, while it applies to persons presently employed by the State Department of Economic Security, does not apply to persons who have been granted leaves of absence, or who have a statutory right to secure upon demand leaves of absence from the Department for the purpose of running for partisan political office." *Id.* at 611.

The *Johnson* decision is undeniably an incorrect interpretation of the Hatch Act.

A review of the legislative history of the provisions of the Hatch Act makes it unmistakably clear that covered state employees are subject to the prohibitions of the Act regardless of leave status. During hearings on a proposal to extend the Hatch Act to state and local government employees, Congress specifically considered and rejected a provision which would have exempted from the Act's prohibitions those candidates who had taken a leave of absence without pay. 86 Cong.Rec. 2872–75 (1940). The legislative history of the Act further discloses that the intent of the statute was to prohibit partisan candidacy by any covered employee who had not resigned from his or her employment. See 86 Cong.Rec. 9447 (1940). Thus, it is clear from the statute and the legislative history that a covered state employee is prohibited from running for public office in a partisan election, even if on approved leave without pay.

DJT also relies on the Board's decisions in *Special Counsel v. Hayes*, 16 M.S.P.R. 166 (1983), and *Special Counsel v. Yoho*, 15 M.S.P.R. 409 (1983) for support of the proposition that Kehoe's removal is unwarranted because his violation of the Hatch Act was not willful or knowing. In *Hayes*, the Board held that an employee's reasonable reliance on his attorney's erroneous advice that his candidacy for political office did not violate the Hatch Act did not warrant his dismissal since the violation was not willful or knowing. In *Hayes*, however, the advice was not contradicted by the Board or the state agency which employed him before he began campaigning. The employee in *Hayes*, unlike Kehoe, was not notified that the Office of the Special Counsel viewed his candidacy as a violation until after he ran and lost the election.

*Yoho* is similarly distinguishable. In *Yoho*, the Board held that the dismissal of the employee was not warranted based on the employee's good faith belief that his candidacy was nonpartisan and therefore not in violation of the Hatch Act. The Board found his belief reasonable based on a number of factors, including the absence of political coloring of the elected office, the employee's passive role in the election in not seeking or expending funds during the campaign, and the fact that no superior had questioned the propriety of his position as an elected official in relation to his state employment.

The facts in the instant case are especially egregious and consequently distinguishable from those involved in *Hayes* and *Yoho*. This is the second time that Kehoe has taken a leave of absence to run for political office. When Kehoe filed an affidavit of partisan candidacy in 1982, the Office of the Special Counsel officially warned him that his candidacy was in violation of the Hatch Act. In response to Kehoe's statement that he relied on *Johnson v. Cushing, supra*, OSC wrote Kehoe that it would not seek disciplinary action against him for his 1982 candidacy, but officially warned him a second time that future political activity would constitute a willful violation of the Hatch Act necessitating his removal from state employment. Notwithstanding the OSC's warnings, in 1984 Kehoe again filed for partisan candidacy in the Minnesota legislature. Kehoe's attitude is indicated by his letter to OSC informing them of his impending candidacy, "[y]ou might want to dust off your file on me; I am again thinking of becoming a partisan candidate for the Minnesota Legislature." In response, OSC again informed Kehoe that his candidacy while remaining on the state payroll would violate the Hatch Act. OSC enclosed a copy of the Board's opinion in *Special Counsel v. Daniel*, 15 M.S.P.R. 636 (1983) in which it strongly rejected the *Johnson* holding as an "ipse dixit pronouncement that * * * totally disregards consistent prior administrative rulings." *Id.* at 638.[3] Moreover, Kehoe's own employer warned him that the Board viewed his candidacy while on unpaid leave a violation of the Hatch Act which could result in his removal. Kehoe acknowledged under oath that he had been

---

**3.** The district court in this case agreed with the *Daniel* Board's opinion of *Johnson v. Cushing* and declined to follow its reasoning, holding instead that a covered state employee who runs for partisan political office violates the Hatch Act, even if on approved leave without pay.

warned of OSC's prosecutorial authority and that he clearly understood the risk.

In light of these circumstances, we find that it was within the Board's discretion to conclude that Kehoe willfully and knowingly violated the Hatch Act by campaigning for political office while a state employee and that his dismissal was, therefore, warranted. Kehoe's reliance on *Johnson* and the disregard paid to the OSC's warnings can reasonably be characterized as a knowing assumption of the risk that the OSC would file charges against him for violating the Hatch Act rather than a good faith reliance on the *Johnson* decision. *See Special Counsel v. Daniel, supra,* 15 M.S.P.R. at 638.

We conclude that the Board properly exercised its discretion when it ordered the removal of Thomas J. Kehoe from state employment upon finding that he knowingly violated the Hatch Act when he became a candidate in a partisan election. We accordingly reverse the district court's determination to the contrary.

ARNOLD, Circuit Judge, dissenting.

In 1984, when Mr. Kehoe was deciding whether to run for office again, he had two relevant pieces of legal information before him. He knew that the United States District Court for the District of Minnesota, his own jurisdiction, had ruled, in a case involving the very state agency for which he worked, that his candidacy would not be unlawful. *Johnson v. Cushing,* 483 F.Supp. 608 (D.Minn.1980). He also knew that the Merit Systems Protection Board thought *Johnson* was wrong. This Court now upholds the Board's determination that Mr. Kehoe's violation of law was "willful."

I respectfully dissent. I have no quarrel with the proposition that *Johnson* was in fact wrongly decided, and that the Board's legal position—that the Hatch Act was violated in this case—is correct. The separate and more important question, however, is whether Mr. Kehoe's conduct can be reasonably classified as willful. Until today, I had believed that federal courts were more reliable and authoritative interpreters of federal law than administrative agencies. Apparently this belief was incorrect. To my way of thinking, it was entirely reasonable for the employee involved here to rely upon a reported federal-court interpretation of the governing statute. Mr. Kehoe should not have to bear the consequences of the fact that this Court, years later, has determined that the decision on which he relied was not correctly decided.

Because the Court's action today seems both unjust and an unwarranted degradation of the status of federal courts as expositors of federal law, I dissent.