Thomas B. WHALEN et al., Plaintiffs,

v.

John A. VOLPE, Secretary of the Department of Transportation, et al., Defendants.

No. 5–72 Civ. 15 to 5–72 Civ. 18.

United States District Court,
D. Minnesota,
Fifth Division.

Sept. 6, 1972.
As Amended Oct. 6, 1972.

James P. Miley and Israel E. Krawetz, St. Paul, Minn., for plaintiffs.

David Loeffler, Milwaukee, Wis., for intervenor Int'l. Brother. of Teamsters.

had invested in the company had defendants performed their contract.

James Finley, St. Paul, Minn., for intervenor Metropolitan Transfermen's Assoc.

James L. Nelson, St. Paul, Minn., for intervenor Minnesota Motor Transport Assn.

Robert G. Renner, U. S. Atty., by John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

The above entitled matter came on for trial before the Court without a jury on August 15, 1972. The Court having heard testimony introduced by the parties, and having considered all of the evidence herein, makes the following memorandum which constitutes findings of fact and conclusions of law and is made part of the annexed order.

On February 8, 1972, plaintiffs, Virgil J. Williams, Emil Le Tendre, Jr., Roger D. Skinaway, and Thomas B. Whalen filed separate suits challenging the validity of a regulation promulgated by the Department of Transportation. The regulation is part of the Motor Carrier Safety Regulations which control the operation of motor vehicles operating in interstate commerce and appear as part 391 of Title 49, Code of Federal Regulations. In particular plaintiffs challenge Sections 391.11 and 391.15, which read as follows:

391.11 Qualification for drivers.

(a) A person shall not drive a motor vehicle unless he is qualified to drive a motor vehicle.

(b) Except as provided in 391.61, a person is qualified to drive a motor vehicle if he . . .

(9) Is not disqualified to drive a motor vehicle under the rules in 391.15;

391.15 Disqualification of drivers.

(a) A driver who is disqualified shall not drive a motor vehicle. A motor carrier shall not require or permit a driver who is disqualified to drive a motor vehicle.

(b) A driver is disqualified—

(1) For three (3) years after he has been convicted of, or forfeited bond or collateral upon, a charge of committing any of the following criminal offenses:

\*      \*      \*      \*      \*      \*

(iii) Operating a vehicle after December 31, 1970 and while under the influence of alcohol . . .

Upon defendants' motion the separate cases were consolidated for trial. Prior to trial the cases of Virgil J. Williams, Emil Le Tendre, Jr., and Roger D. Skinaway were dismissed without prejudice upon plaintiffs' request. The following parties have intervened as party plaintiffs: 1) The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America; 2) Minnesota Motor Transport Association; and 3) Metropolitan Transfermen's Association.

Plaintiff, Thomas B. Whalen, a citizen of Minnesota, was previously employed as a driver of motor vehicles in interstate commerce. By reason of a conviction for driving his personal automobile while under the influence of alcohol on November 16, 1971, the plaintiff was disqualified as a driver of vehicles in interstate commerce for a period of three years, pursuant to Motor Carrier Safety Regulation No. 391.15. Plaintiff was discharged from his employment and has not been able to find work. There is testimony from plaintiff's superiors that plaintiff had been a good employee and would be permitted to continue driving for the company if it were not for the operation of the above regulation. The action as to plaintiff is a final action of the agency and he has no adequate remedy at law.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America is a labor association organized to protect and defend the needs of workers at their place of work. The Metropolitan Transfermen's Association, Inc. is a non-profit Minnesota corporation. Eighty-eight of its

one hundred and two members are common carriers, many of which are engaged in interstate commerce. The Minnesota Motor Transport Association is an unincorporated association consisting of individuals and corporations engaged in business in Minnesota and elsewhere as common carriers and private carriers operating in interstate commerce.

It is plaintiffs' contention that the regulation as promulgated is arbitrary, capricious, and unreasonable and violative of due process of law as guaranteed by the Constitution. The Court does not find it necessary to deal with the due process claim at this time and will address only the issues of whether the regulation is arbitrary, capricious and unreasonable.

This action was brought pursuant to Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; 49 U. S.C. § 1655(h); 49 U.S.C. § 1653(c); and 28 U.S.C. § 2201 and § 2202. Plaintiffs basically seek a declaratory judgment that the regulation is null and void, and a reinstatement of plaintiff Whalen to his former job as a driver in interstate commerce.

The scope of review under the Administrative Procedure Act is limited. The Act provides:

5 U.S.C. § 706 Scope of Review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

.   .   .   .   .   .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; .   .   .

It has been consistently held that a court may not simply substitute its judgment for that of the agency, and inquiry must be limited to a determination as to whether there is a rational basis in fact for the promulgation of the regulation. Carlisle Paper Box Co. v. N. L. R. B., 398 F.2d 1 (3rd Cir. 1968); N. L. R. B. v. Jas. H. Matthews & Co., Indus. Marking Products Division, 342 F.2d 129 (3rd Cir. 1965) cert. denied 382 U.S. 832, 86 S.Ct. 74, 15 L.Ed.2d 76; Hoffman v. Ribicoff, 305 F.2d 1 (8th Cir. 1962); Coakley v. Postmaster of Boston, Massachusetts, 374 F.2d 209 (1st Cir. 1967). On the other hand a reviewing court cannot be a rubber stamp for arbitrary administrative action.

The studies and reports submitted by defendants make it all too clear that the drinking driver poses a substantial problem on the highways today. In the *1968 Alcohol and Safety Report* it is revealed that the use of alcohol by drivers and pedestrians leads to some 25,000 deaths and a total of at least 800,000 crashes in the United States each year. Further, more than half of the adults in this country who drink, use the highways at least occasionally after drinking. It is undisputed that the problem is present. It is the means to combat the problem that need to be examined.

Prior to the trial of this case the defendants had unsuccessfully moved for summary judgment and judgment on the pleadings, Federal Rules of Civil Procedure 56 and 12(c). At that time defendants submitted several studies and reports in an effort to establish a rational basis in fact for the promulgation of the contested regulation. The defendants submitted the following:

1) *1965–1966 Accidents of Large Motor Carriers of Property* (Bureau of Motor Carrier Safety—United States Department of Transportation);

2) *1967 Accidents of Large Motor Carriers of Property* (Bureau of Motor Carrier Safety—United States Department of Transportation);

3) *1968 Alcohol and Highway Safety Report* (A study transmitted by the Sec-

retary of Transportation to the Congress, in accordance with the requirements of Section 204 of the Highway Safety Act of 1966).

4) *Alcohol Abuse and Traffic Safety: A Study of Fatalities, DWI Offenders, Alcoholics, and Court-Related Treatment Approaches* (Lyle D. Filkins, et al.—United States Department of Commerce).

5) *Alcohol and Highway Safety: Behavioral and Medical Aspects* (Project ABETS University of Vermont—prepared for the United States Department of Transportation).

The first two reports submitted by defendants deal generally with a history of various accidents involving large commercial vehicles. The conclusion drawn in these studies is that many of the accidents could have been avoided by the drivers involved. These reports, however, say nothing about the possible role of alcohol in the accidents, nor do they go into the past driving records of the drivers involved, and hence, are only tangentially related to the issues involved in the promulgation of this regulation.

The latter three reports deal in depth with the problems of highway safety and the use of alcohol. Unfortunately, these studies deal with the use of alcohol by drivers in their personal vehicles and do not purport to deal with the use of alcohol by professional drivers of large commercial vehicles.

At the hearing on the motion for summary judgment, the Court requested of the defendants that they submit, by way of studies, reports and affidavits, support for their proposition that there is a valid, substantial relationship between a

conviction for drunk driving while operating a personal vehicle and that same individual's future driving performance while driving a commercial vehicle. In other words, on what basis can it be assumed that someone who may be convicted of drunk driving on Saturday night, will present such special hazards on the road on Monday morning, that he should not be permitted to drive a commercial vehicle in interstate commerce.[1]

In response to the Court's request the defendants submitted affidavits by Kenneth L. Pierson, Deputy Director of the Bureau of Motor Carrier Safety, and William R. Fiste, Chief of the Regulations Division of the Bureau of Motor Carrier Safety. Attached to the affidavits were two compilations of the Bureau. The first consisted of the case history of thirty-four commercial vehicle accidents in which the driver had a prior history of driving offenses. There is no indication in these cases that the use of alcohol had any part in the accident. Furthermore, although all of the drivers involved had many driving violations, few of the drivers involved had convictions for drunk driving. It is essential to focus on the issue before the Court. Perhaps a long history of driving violations could be an indication that an individual may be a danger to society if permitted to continue driving on the highways. It is possible that the various scientific studies could support such an inference. However, the regulation in this case does not allow for a consideration of an individual's driving history. It is inflexible, and is applicable upon an individual's first traffic violation, if that violation is for drunken driving. Hence, the consideration must be as to what inferences can be drawn,

---

[1]. By phrasing the issue in these terms, certainly the Court does not mean to condone driving under the influence of alcohol at any time. The Court recognizes that the problem of the drinking driver is of near epidemic proportions. It is the position of the defendants in this case that certain inferences can be drawn from a DWI conviction, and based on these in-ferences it is reasonable to exclude an individual from driving commercially in interstate commerce for a period of three years after such a conviction. The Court is duty bound to examine the defendants' contention and to determine if there is any rational basis in fact for such inferences.

not from a history of driving offenses, but from the single offense of drunk driving. In particular, can it be inferred from the fact that an individual is convicted of drunk driving while operating his personal vehicle, that this individual would pose a special hazard if permitted to operate a commercial vehicle in interstate commerce.

The second compilation consisted of twenty-nine case histories of accidents involving commercial vehicles in which the driver had been drinking prior to the accident. However, in the majority of these cases the driving history did not include prior offenses for drunken driving. These compilations do not purport to be scientific studies, and in fact are merely specially selected cases. They were selected out of a group of in excess of 600,000 cases. This collection of cases proves little more than the fact that the various accidents reported did in fact exist. As in the previous compilation, no conclusions and inferences can be drawn from such a compilation.[1a]

It cannot be overemphasized that the contested regulation is not one of general application. It does not deal with the vast majority of drivers in private vehicles. It is specifically aimed at the professional driver operating in interstate commerce.[2] Moreover, the operation of the regulation is not limited to violations occurring on the job. As in the case of the plaintiff, Thomas Whalen, a driver can be disqualified from driving professionally in interstate commerce when convicted of an alcohol-related

traffic offense in his personal vehicle. Consequently, in order to uphold the validity of the regulation it must be said that there is a rational basis in fact for believing that an individual who is convicted of an alcohol-related driving offense in his personal car poses somewhat of a risk when permitted to drive a commercial vehicle. This rational basis in fact must be more than conjecture. Hundreds of drivers throughout the country have been affected by the regulation at great expense to the individuals, as well as to their employers. At the very least these people are entitled to valid reasons for their disqualification.

The record is totally devoid of any rational basis upon which the Department of Transportation might conclude that there is a correlation between a conviction of drunken driving while in a private automobile and future driving habits of an individual driving a commercial vehicle in interstate commerce. The only scientific studies that attempted to deal with the driving and drinking habits of professional drivers was introduced by the plaintiffs.[3] These studies, though by no means conclusive, indicated that there was a substantial difference between the driving habits of professional drivers of commercial vehicles and the driving habits of drivers in private automobiles in relation to the use of alcohol. The presence of alcohol appears to be far less frequent in accidents involving commercial vehicles than in accidents involving private vehicles.[4]

---

1a. At trial, defendants relied solely on the previously submitted studies and affidavits and produced no additional evidence for the Court's consideration.

2. It should be noted that there are not similar disqualification regulations for airline pilots, steamship captains, railroad engineers, or intrastate bus drivers.

3. *The Role of Alcohol in Collisions Involving Trucks*, Julian Waller Archives En-

vironmental Health, Vol. 20, Feb. 1970; *Truck Accident Study Procedures and Findings*, Ernst & Ernst; *Safety Research Information Service*, National Safety Council.

4. In the *1968 Alcohol and Highway Safety Report* it is stated at p. 28 that in a study of run of the mill accidents in Grand Rapids, Michigan, 17% of the 5985 drivers had been drinking prior to

At the very best the studies are inconclusive. It is not a matter of weighing the evidence since there is no evidence. Nothing that has been submitted to this Court deals with the assumption behind the promulgated regulation that a conviction for drunk driving in a personal vehicle is indicative of how one would drive a commercial vehicle. The Court is not precluding the possibility that this assumption may be established as a totally warranted assumption after the proper studies are made. However, at this time no such study has been brought to the attention of this Court. The Department of Transportation has no record as to the number of drivers of commercial vehicles who have been convicted of drunk driving in either their personal or their commercial vehicles. No studies have been conducted to determine if those who receive a drunk driving citation in their personal car tend to be more of a hazard in their commercial driving than the average driver of commercial vehicles. Any conclusions drawn without such studies are mere guesses.

It is the opinion of this Court that the promulgated regulation has no rational basis in fact, is arbitrary, capricious, unreasonable and is null and void.

It is so ordered.

It is further ordered that the disqualification of plaintiff Thomas Whalen be rescinded and his driving privileges as a commercial driver in interstate commerce be restored.

It is further ordered that consistent with 28 U.S.C. § 2202 this Court will maintain jurisdiction over this matter to insure that the mandates of this Order and Declaratory Judgment are complied with.

the accident. In the Ernst & Ernst study, a survey of truck accidents from ten states revealed that out of 2143 drivers only 1.9% had been drinking prior to the accident, and in a survey of accidents of ten trucking companies involving 1029 drivers only 0.2% had been drinking prior to the accident.