555 F.Supp. 146 (1982)
Sam COSTNER, Plaintiff,
v.
UNITED STATES; Raymond J. Donovan, Secretary of Labor; and Drew Lewis, Secretary of Transportation, Defendants.
No. 81-0138-C (5).
United States District Court, E.D. Missouri, E.D.
December 30, 1982.
*147 Stuart R. Berkowitz, Clayton, Mo., for plaintiff.
Bruce D. White, Asst. U.S. Atty., St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
CAHILL, District Judge.
This matter is before the Court on cross motions for summary judgment.
Plaintiff Sam Costner has a medical history of epilepsy. He brings this action for declaratory relief under the Administrative Procedure Act, 5 U.S.C. § 701, et seq., and the United States Constitution to review a decision of the United States Department of Labor (DOL) not to file a complaint under § 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793, and to review a regulation of the United States Department of Transportation (DOT) that prohibits persons with an established medical history or clinical diagnosis of epilepsy from driving in interstate or foreign commerce. 49 CFR § 391.41(b)(8).
Costner suffered a fractured skull at age 11, and at the age of 15 began to have epileptic seizures which were satisfactorily controlled by medication by the time he reached 24 years of age. Costner has been on medication since 1958 and has been seizure free since 1959. He has driven trucks and heavy transport vehicles since 1957.
Costner applied for employment with Slay Transportation Company on May 6, 1974. At that time he had driven trucks for 15 years without an accident. Costner was hired by and worked for Slay from May 8, 1974 to August 26, 1974, driving heavy transport vehicles carrying flammable and inflammable chemicals in interstate commerce. Slay, having learned of Costner's epilepsy history, suspended him on August 26, 1974, pending receipt of a doctor's certificate from a company physician qualifying him to drive in interstate commerce.
On August 30, 1974, Costner was examined at the Kosciusko Medical Center by Dr. Elbert Cason, Slay's physician. Dr. Cason refused to certify Costner as qualified to drive a motor vehicle in interstate commerce because a Federal Motor Carrier Safety (FMCS) regulation provided that a person who has an established medical history of clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a motor vehicle is physically unqualified to drive a motor vehicle. 49 CFR § 391.41(b)(8). Based on Dr. Cason's report, Slay terminated Costner.
On September 17, 1974, Costner was examined, at his request, by Dr. John D. McGary of the Department of Neurology of St. Louis University. Dr. McGary reported that Costner had a "mental or convulsive disorder" that was "fully controlled," and had a normal EEG tracing. Dr. McGary certified to the State of Missouri, Department of Revenue, Driver's License Department, that Costner was capable of operating a motor vehicle safely.
On November 14, 1974, Costner was examined by Dr. J.A. Costrino, who found him to be a controlled epileptic. Dr. Costrino *148 stated that in his opinion the plaintiff was a "safe driver," and certified him as qualified to drive a motor vehicle in interstate commerce under the FMCS regulations.
On April 10, 1975, Mr. Costner filed a complaint with the Office of Federal Contract Compliance Programs (OFCCP). Costner alleged that Slay discriminated against him by terminating his employment as an interstate truck driver on the basis of his history of epileptic seizures. OFCCP investigated the facts of the complaint and requested, on a number of occasions, opinions from the Department of Transportation concerning the interpretation of the relevant FMCS regulation. On May 8, 1980, Weldon J. Rougeau, Director of OFCCP, informed Costner, pursuant to 41 CFR § 60-741(g)(1), that his case was not suitable for administrative enforcement. Mr. Rougeau based his decision on the FMCS regulations and the public policy which stresses safe vehicle operation. This constituted final agency action.
This Court's review of the agency's decision not to initiate administrative enforcement is defined by 5 U.S.C. § 706(2)(A), which provides that the court shall set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Vislisel v. U.S. Department of Labor, 21 FEP 981 (N.D.Iowa), aff'd 605 F.2d 1209 (8th Cir.1979), cert. denied 444 U.S. 1014, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). The arbitrary or capricious standard entails a narrow scope of review. Under this standard the Court is to consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; the Court is not empowered to substitute its judgment for that of the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1970).
It appears that OFCCP based its decision not to initiate administrative enforcement under § 503 on the governing FMCS regulations, policy considerations of public safety, and its own review of literature concerning epilepsy. Accordingly, this Court cannot say OFCCP's refusal to initiate administrative enforcement was arbitrary, capricious, or an abuse of discretion.
OFCCP's refusal to initiate enforcement was based primarily on FMCS regulation 49 CFR § 391.41(b)(8), which provides that a person is qualified to drive a motor vehicle if that person "[h]as no established medical history or clinical diagnosis of epilepsy or other condition which is likely to cause loss of consciousness or any loss of ability to control a motor vehicle." An official interpretation of 49 CFR 391.41(b)(8) was issued in 1977. That interpretation states "It is the intent to permanently disqualify a driver who has a medical history or clinical diagnosis of epilepsy." 42 Fed.Reg. 60078 (Nov. 23, 1977). The defendants' maintain that there is a rational basis for the present regulation. They maintain that the overwhelming majority of medical data support the retention of the regulation in its present form because the medical evidence establishes that an epileptic is more likely to be involved in a motor vehicle accident than a nonepileptic. This conclusion is based primarily on two recent literature searches by the Federal Highway Administration (FHWA). These searches allegedly failed to disclose any studies showing that certain categories of epileptics are less likely to have seizures than other categories of epileptics, and have failed to show any medical basis upon which the likelihood of an individual having a seizure could be accurately predicted. Based on this the defendants argue it is not possible to issue a regulation which would qualify epileptics who have been seizure free for a given period of time or who have certain types of epileptic seizures. Costner, however, attacks these literature studies as inconclusive and argues that the initial ban of all epileptics was based primarily upon inference, conjecture, and speculation.
In 1976, the FHWA received a report from a contractor, George J. Gruber, of the Southwest Research Institute, in furtherance of the development of a guide for medical examiners to determine fitness to *149 drive in interstate commerce. The study involved an analysis of the duties and stresses involved with being a commercial motor vehicle driver and related these stresses to various medical conditions which had been determined to be disqualifying under the regulations. Costner points out that the Gruber document is merely a guide to medical examiners. With respect to epilepsy it only explains the regulation and states certain generalities concerning the stereotypic epileptic.
In 1978, the FHWA updated its data concerning the epilepsy rule by performing a literature search and analysis designed to determine potential risks that drivers with epileptic conditions present to highway safety. Again, in 1981, the FHWA completed a literature search in connection with the epilepsy rule. Costner argues that the 1978 and 1981 re-studies added nothing to the defendants' evidentiary basis for the epilepsy rule because they did no more than canvass available literature and conclude that no change was called for.
However, the affidavit of Dr. William M. Landau, Professor and Head of Neurology at Washington University School of Medicine and Neurologist in Chief at Barnes Hospital, points out that individual patients who comply with their medication prescription and are maintained free of seizures for a year or more are reliably considered to be no more at risk than members of the population who have never had seizures. Affidavit at 2. Dr. Landau states that he reviewed the latest FHWA literature search and its cited publications. He states that these data are subject to serious criticism because they are seriously out of date in consideration of the great advances in the effectiveness of anticonvulsant therapy. Affidavit at 3. The patients studied, he maintains, are a mixed bag in regard to nature of seizure disorder, degree of supervision and reliability, duration free of symptoms, and other important individual characteristics. Furthermore, the nature and severity of accidents alleged to be related to epilepsy are not adequately evaluated. Affidavit at 3-4.
Dr. Landau argues that the history of a symptom is not the same as a current risk. For the controlled epileptic patient there is no risk. Affidavit at 3. Dr. Landau examined Costner, reviewed his medical history in detail, and found his physical and neurological examinations to be normal. Dr. Landau states that it is doubtful if Costner has any significant risk of seizure recurrence even if his medication were discontinued. With medication Costner is stated to probably be more secure from seizure risk than a normal individual of the same age who has never had an epileptic attack in his life. Id.
Although Costner attacks the rationality of the regulation as a whole, he puts forth also the narrower issue whether the epilepsy rule as applied to him is unconstitutional. The regulatory criteria for evaluation under § 391.41(b)(8) defines epilepsy as a chronic functional disease characterized by sudden fits or attacks that occur without warning, resulting in loss of voluntary control which may lead to loss of consciousness and convulsions. 42 Fed.Reg. 60078 (Nov. 23, 1977). Dr. Gruber's 1976 study found that commercial motor vehicle transportation places heavy mental and physical demands on the operators of commercial motor vehicles. The commercial motor vehicle driver must cope with abrupt duty status changes, disruption of sleep-wake patterns, metabolic clock pattern differentials, varying diet, sleep deprivation, long hours of driving, short notice of assignments, tight delivery schedules, delays, traffic, and economic pressures. Based upon these factors the study concluded that the driving task was physically and mentally exhausting. As such, the driving task might be conducive to epileptic seizures. To the overwhelming majority of epileptics this rule is reasonably related to a legitimate governmental concern of public safety.
The question before the Court is the rationality of including in the above mentioned category an individual, who has not had a seizure for over 22 years; has a history of driving trucks safely in interstate commerce for 15 years; has repeatedly *150 borne, and is therefore accustomed to, the heavy mental and physical demands on commercial motor vehicle operators; has repeatedly been medically examined and found capable of driving a motor vehicle in interstate commerce; and has, by virtue of his medically controlled condition, been deemed as safe as or safer than those never having suffered a seizure.
The asserted justification for the epilepsy classification is the objective of highway safety. Those suffering from epilepsy are generally, and it appears to the Court correctly, prohibited as a class from operation of a motor vehicle in interstate commerce because they are at more risk of having an accident than the general public. One such as Costner, however, who may be deemed as safe as any other healthy member of the general public, does not belong in this class. Accordingly, as applied to Costner, on the facts of this case only, the regulation is broader than rationally necessary to achieve its desired objective of highway safety.
The test for determining whether a rule is unconstitutionally discriminatory is whether there is a rational basis for it. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). On the narrow facts of this case the Court finds that there is no rational basis for applying the epilepsy bar to Costner, and, therefore, it is unconstitutionally discriminatory only as applied to him.
The Court does not believe that the general bar against epileptics as a class is improper, but that the applicability of the permanent bar to an individual with the medical characteristics of the plaintiff is not a rational application of that law. As to the argument that a government regulatory agency (DOT here) does not have the time or manpower to make an individualized examination of each would-be driver, such inconvenience should not stand in the way of justice. Stanton v. Stanton, 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). This is not to say that the government could logically draw the line of incompetence for some individuals who are seizure-free, but certainly 21 years is long enough, especially when they include 15 accident-free years of interstate driving.
In summary, then, administrative regulations, however sound generally, must, at some point, be considered in the light of individual need and variation and a rational decision be made as to the applicability of the administrative regulation to the particularized case.
While the plaintiff had epileptic seizures from age 11 through 24, he has been completely free of all seizures for more than 21 years. He has driven trucks safely in interstate commerce for 15 years. He has been examined and treated by competent physicians who are acknowledged experts in the field of neurology. These doctors have prescribed and apparently plaintiff has continuously taken appropriate medication to control epileptic seizures for many years. It is also the considered opinion of these neurologists that there would be no significant risk of seizure even if the medication were discontinued. The plaintiff is physically qualified in every other respect to drive trucks that are engaged in interstate commerce, and is, in fact, teaching handicapped persons to drive automobiles. He appears to be mentally alert and extremely conscientious. It is certainly within the spirit of the Rehabilitation Act, 29 U.S.C. § 793, that this individual be considered upon his own medical and physical characteristics, and not be permanently barred by the application of a generic restriction. Accordingly,
Plaintiff's motion for summary judgment is GRANTED, with the proviso that the defendant may require the plaintiff to submit to such medical, physical, or neurological examinations as are reasonable and necessary initially and from time to time, and to further require plaintiff to submit reasonable proof that he is taking anti-convulsant medication prescribed for him.