**Sam COSTNER, Appellee,**

v.

**UNITED STATES; James J. Donovan, Secretary of Labor, and Drew Lewis, Secretary of Transportation, Appellants.**

No. 83–1282.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Nov. 9, 1983.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Carolyn B. Kuhl, Deputy Asst. Atty. Gen., J. Paul McGrath, Asst. Atty. Gen., Margaret E. Clark, Atty., Civ. Div., Appellate Staff, Dept. of Justice, Washington, D.C., for appellants.

Stuart R. Berkowitz, Clayton, Mo., for plaintiff-appellee.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Sam Costner was terminated from his interstate truck driving job pursuant to a Department of Transportation regulation that prohibits persons with an established medical history or clinical diagnosis of epilepsy from driving trucks in interstate commerce. Costner brought this action claiming that the regulation as applied to him is overbroad and violates the equal protection component of the due process clause of the fifth amendment. Costner has not had a seizure for over twenty years and he has driven trucks in interstate commerce, without accident, for approximately fifteen years. The district court granted Costner's motion for summary judgment and the United States appealed. We reverse.

Costner, who suffered a fractured skull in his youth, began to have epileptic seizures at age 15. Costner has taken medication to control his seizures since 1958 and has been seizure-free since 1959. From 1957 to 1974, Costner was employed as a truck driver in interstate commerce. In 1974, Costner was hired by Slay Transportation Company to drive heavy transport vehicles carrying flammable chemicals in interstate commerce. After a short time on the job, however, Slay suspended Costner when it learned of his history of epilepsy. Costner was examined by a company physician, who

refused to certify him as qualified under federal regulations. Based on the physician's report and the federal regulations, Slay terminated Costner's employment.

Under federal motor carrier safety regulations, a person with an established medical history or clinical diagnosis of epilepsy is considered physically unqualified to drive a motor vehicle in interstate or foreign commerce. 49 C.F.R. § 391.41(b)(8). This regulation is intended "to permanently disqualify a driver who has a medical history or clinical diagnosis of epilepsy." 42 Fed.Reg. 60078, 60082 (Nov. 23, 1977).

Costner brought this action for review of 49 C.F.R. § 391.41(b)(8), alleging that it violates the equal protection component of the fifth amendment. The district court granted Costner's motion for summary judgment. The court first acknowledged that the regulation was constitutional on its face: "[t]o the overwhelming majority of epileptics this rule is reasonably related to a legitimate governmental concern of public safety." *Costner v. United States,* 555 F.Supp. 146, 149 (E.D.Mo.1982). In the court's view, however, it was not rational to include within the regulation an individual such as Costner:

> an individual, who has not had a seizure for over 22 years; has a history of driving trucks safely in interstate commerce for 15 years; has repeatedly borne, and is therefore accustomed to, the heavy mental and physical demands on commercial motor vehicle operators; has repeatedly been medically examined and found capable of driving a motor vehicle in interstate commerce; and has, by virtue of his medically controlled condition, been deemed as safe as or safer than those never having suffered a seizure.

*Id.* at 149–50. The court concluded that "as applied to Costner, on the facts of this case only, the regulation is broader than rationally necessary to achieve its desired objective of highway safety." *Id.* at 150.

■ The framework for evaluating constitutional challenges to statutory or regulatory classifications is well established. The first determination is the appropriate test to be employed. Because the classification does not impermissibly interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the strict scrutiny test does not apply. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Fitz v. Dolyak,* 712 F.2d 330, 332 (8th Cir.1983); *Antonio v. Kirkpatrick,* 579 F.2d 1147, 1148–49 (8th Cir.1978). Instead, the classification is to be examined under the rational basis test and the regulation must be upheld if it is rationally related to furthering a legitimate state purpose. *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 312, 96 S.Ct. at 2566; *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 943, 59 L.Ed.2d 171 (1979); *Fitz v. Dolyak, supra,* 712 F.2d at 332. This test employs "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 314, 96 S.Ct. at 2567. Indeed, this court will overturn a legislative classification as violative of equal protection only if it is so unrelated to the achievement of any legitimate purpose as to make the provision irrational. *Vance v. Bradley, supra,* 440 U.S. at 97, 99 S.Ct. at 942–943; *Jewson v. Mayo Clinic,* 691 F.2d 405, 411 (8th Cir.1982).

■ The district court concluded, and we agree, that as a general matter, the regulation is rationally related to the legitimate state interest in public safety. Significantly, even Costner does not dispute this part of the district court decision. The disputed regulation was adopted in 1970 as part of a complete revision of the federal motor carrier safety regulations which tightened substantially the physical qualifications for interstate truck driving by including criteria for evaluating high-risk medical categories. 35 Fed.Reg. 6458 (Apr. 22, 1970). Since its enactment, the regulation has been reevaluated on three occasions. On each occasion,

the Federal Highway Administration (FHWA) has concluded that available medical data does not allow it to formulate criteria for qualifying only certain persons with epilepsy to drive trucks in interstate commerce. Hence, the agency has decided to retain the regulation in its present form.

The FHWA has relied on a number of studies which show that as a group, individuals with epilepsy have an appreciably higher accident rate than those without the condition. The studies also suggest that truck driving involves exposure to stressful conditions which can be conducive to epileptic seizures. With regard to the consideration of time since the last seizure, the agency relied on at least one report concluding that there is no data to support a distinction among individuals made on that basis. Further, a 1981 FHWA study considered whether an individual's use of anticonvulsive medication could be taken into account in predicting an individual's likelihood of having a seizure. The study concluded that the existence of a significant problem with patient compliance with prescribed medication regimens precluded reliance on an individual's use of medication as a reliable predictor of the likelihood of recurrent seizures. The FHWA has given extensive consideration to the regulation and has concluded that in the context of interstate truck driving, public safety concerns dictate that a broad, preventive rule be employed. We believe that the agency's regulation is rationally related to furthering the legitimate state interest in public safety.

Although the district court concluded that the regulation had a rational basis, it nevertheless held that the regulation was unconstitutionally overbroad as applied to Costner. The court stated that "administrative regulations, however sound generally, must, at some point, be considered in the light of individual need." *Costner v. United States, supra,* 555 F.Supp. at 150. This is the flaw in the district court decision.

The Supreme Court has considered, on several occasions, individual challenges to statutory or regulatory classifications. In *Massachusetts Board of Retirement v. Mur-*

*gia, supra,* 427 U.S. at 307, 96 S.Ct. at 2562, the plaintiff challenged a statute that required state uniformed police to retire at age 50. The purpose of the mandatory retirement age provision was to protect the public by assuring the physical preparedness of the uniformed police. It was undisputed in *Murgia* that the plaintiff was still physically and mentally capable of performing the duties of a police officer. Nevertheless, the Court held that the mandatory retirement age was not violative of equal protection:

> That the State chooses not to determine fitness more precisely through individualized testing after age 50 is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum-age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chosen the best means to accomplish this purpose. But where rationality is the test, a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."

*Id.* at 316, 96 S.Ct. at 2568. [footnote and citation omitted].

In *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979), the plaintiffs contended that an otherwise valid transit authority policy against hiring methadone users should not be applied to persons who had been on a methadone treatment program for a year with satisfactory results, and who, when examined individually, satisfied the employment criteria. The Court disagreed, stating that even if it was unwise for an employer to rely on a general rule rather than to consider individually each job applicant, it nevertheless did "not implicate the principle safeguarded by the Equal Protection Clause." *Id.* at 592, 99 S.Ct. at 1369.

In this case, Costner has argued vigorously that based on his individual qualifications, he is able safely to drive trucks in interstate commerce. We may assume that this is so. Under *Murgia* and *Beazer,* however, the individual qualifications of the

plaintiff are immaterial to the analysis. If a challenged statutory or regulatory classification is rational, it may be enforced without exception. *See Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 316, 96 S.Ct. at 2568; *New York City Transit Authority v. Beazer, supra,* 440 U.S. at 592, 99 S.Ct. at 1369. *See also Vance v. Bradley, supra,* 440 U.S. at 108–09, 99 S.Ct. at 948–949 (statutory requirement that Foreign Service employees retire at age 60 does not violate equal protection component of fifth amendment, even though such a classification may be to some extent both overinclusive and underinclusive). *Cf. Starr v. Federal Aviation Administration,* 589 F.2d 307 (7th Cir.1978) (Federal Aviation Administration rule prohibiting persons over age 60 from serving as pilots, without provision for exceptions in individual cases, held not arbitrary and capricious); *Monnier v. Department of Transportation,* 465 F.Supp. 718 (E.D.Wis.1979) (FHWA regulation prohibiting insulin-dependent diabetics from operating trucks in interstate commerce, without provision for exceptions in individual cases, held not arbitrary and capricious). No doubt, this rule leads at times seemingly to harsh results. Nevertheless, "[w]e do not decide today that the * * * regulation is wise, that it best fulfills the relevant social and economic objectives that [the government] might ideally espouse, or that a more just and humane system could not be devised." *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). We decide only that the challenged regulation is rationally related to a legitimate state interest, and hence, it does not violate the equal protection aspect of the fifth amendment.

Accordingly, the judgment of the district court is reversed.