931 F.2d 582
 OWNER-OPERATORS INDEPENDENT DRIVERS ASSOCIATION OF AMERICA,
INC., a corporation; Michael York, an individual,
Plaintiffs-Appellees,
v.
Samuel K. SKINNER, Secretary of Transportation; United
States Department of Transportation, Federal
Highway Administration, Defendants-Appellants.
 No. 89-16332.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1989.
Decided April 26, 1991.
 
 Robert Zener, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 Jeffrey King, Collier, Shanno & Scott, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG, SKOPIL, and FLETCHER, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Owner-Operators Independent Drivers Association of America and Michael York (collectively, "Owner-Operators"), filed a lawsuit in district court challenging, on constitutional and statutory grounds, certain drug-testing regulations promulgated by the Federal Highway Administration ("FHWA"). The Secretary of Transportation, Samuel Skinner, and the Federal Highway Administration of the United States Department of Transportation (collectively, "the government"), moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), on the ground that this court has exclusive subject matter jurisdiction over the case. The government requested, in the alternative, that the district court transfer the case to this court, under 28 U.S.C. Sec. 1631 (1988).
 
 
 2
 The district court denied both motions. The government now appeals the district court's jurisdictional determination. We reverse and remand.
 
 Background
 
 3
 On November 21, 1988, FHWA issued regulations mandating various forms of drug testing for the drivers of commercial motor vehicles. See 49 C.F.R. Secs. 391.81-391.123 (1989). Specifically, the regulations require motor carriers to test drivers (i) prior to employment, 49 C.F.R. Sec. 391.103; (ii) biennially during employment, 49 C.F.R. Sec. 391.105; (iii) randomly throughout employment, 49 C.F.R. Sec. 391.109; and (iv) upon reasonable cause to believe the driver has used a controlled substance, 49 C.F.R. Sec. 391.99. The regulations also require drivers to arrange for immediate post-accident testing. 49 C.F.R. Secs. 391.113, 391.115. The FHWA promulgated the regulations pursuant to its authority under 49 U.S.C. Secs. 104, 3102 and 49 U.S.C. app. Sec. 2505(a) (1988).[1]
 
 
 4
 Owner-Operators Independent Drivers Association of America is a nonprofit association of independent owner-operators of motor vehicles. Michael York is an individual owner-operator.[2] On November 14, 1988, Owner-Operators filed a lawsuit in California federal district court challenging the validity of the FHWA's regulations under the fourth, fifth, and fourteenth amendments to the United States Constitution and under various federal statutes. Owner-Operators invoked the district court's general federal question jurisdiction and jurisdiction over commerce under 28 U.S.C. Secs. 1331, 1337 (1988), respectively.
 
 
 5
 On December 21, 1988, the district court issued a temporary restraining order staying the implementation of random and post-accident drug testing. See appendix to Owner-Operators Indep. Drivers Ass'n of America, Inc. v. Burnley, 705 F.Supp. 481, 485-89 (N.D.Cal.1989). In January, the district court granted Owner-Operators' request for a preliminary injunction against the operation of the random and post-accident drug testing requirements. Id. at 485.
 
 
 6
 In March 1989, the government moved for judgment on the pleadings on the ground that the district court lacked subject matter jurisdiction and that venue was improper. The government alternatively sought to have the district court transfer the case to this court under 28 U.S.C. Sec. 1631, which empowers federal courts to transfer to the appropriate forum cases over which they lack jurisdiction "if it is in the interest of justice" to do so.
 
 
 7
 The district court denied the government's motion on August 1, 1989, but certified the question for interlocutory appeal under 28 U.S.C. Sec. 1292(b) (1988). The government lodged a timely petition for appeal with this court, which was granted on October 17, 1989.
 
 Standard of Review
 
 8
 Whether the district court possesses subject matter jurisdiction is a question of law that we review de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).
 
 Statutory Framework
 
 9
 This jurisdictional dispute involves a latticework of statutory provisions. In brief, we must determine whether the jurisdictional connection Congress established in 1966 between the Interstate Commerce Commission ("ICC") and the FHWA survived legislative changes subsequently made in the ICC's regulatory review procedures.
 
 
 10
 In 1966, Congress created the Department of Transportation and, within it, the FHWA. 49 U.S.C. Sec. 1652(a) & (e)(1) (1970). Among the duties assigned the fledgling Department was responsibility for regulating the safety of motor carrier operations and the qualifications of motor carrier employees, a task which had formerly fallen within the purview of the ICC. 49 U.S.C. Sec. 1655(e)(6)(C) (1970), repealed by Pub.L. No. 97-449, 96 Stat. 2444 (1983).[3]
 
 
 11
 Although Congress chose in 1966 to relocate the authority to regulate motor carrier safety, it deliberately forewent altering the procedures for judicial review of such regulations. Congress expressly provided that:
 
 
 12
 Orders and actions of the Secretary [of Transportation] in the exercise of functions, powers, and duties transferred under this chapter, and orders and actions of the Administrators pursuant to the functions, powers, and duties specifically assigned to them by this chapter, shall be subject to judicial review to the same extent and in the same manner as if such orders and actions had been by the department or agency exercising such functions, powers, and duties immediately preceding their transfer.
 
 
 13
 49 U.S.C. Sec. 1653(c) (1970).
 
 
 14
 With respect to motor carrier safety and commercial driver qualification regulations, the ICC was "the department or agency exercising such functions, powers, and duties immediately preceding their transfer" to the Department of Transportation and the FHWA. See 49 U.S.C. Sec. 304(a)(3) (1970), repealed by Pub.L. No. 95-473, 92 Stat. 1466 (1978). At the time of section 1653(c)'s enactment, ICC orders were reviewed by three-judge district courts, with a right of direct appeal to the Supreme Court. 28 U.S.C. Sec. 2325 (1970), repealed by Pub.L. No. 93-584, 88 Stat.1918 (1975); 28 U.S.C. Sec. 1253. In 1975, Congress altered the path of review for ICC actions, substituting for the three-judge district court a right of direct appeal to the court of appeals for the relevant jurisdiction. 28 U.S.C. Secs. 2321, 2342(5) (1976) ("Hobbs Act"). Court of appeals jurisdiction is exclusive. 28 U.S.C. Sec. 2342 (1988).
 
 
 15
 In 1984, Congress expressly directed the Department to promulgate regulations governing the physical qualifications of commercial drivers. 49 U.S.C. app. Sec. 2505(a). Responsibility for promulgating and enforcing motor carrier safety regulations was transferred from the Secretary of Transportation to the FHWA under 49 U.S.C. Sec. 104(c) (1988).
 
 
 16
 Section 10(b) of the Administrative Procedure Act, 5 U.S.C. Sec. 703, prescribes the general judicial review procedure for parties challenging agency actions. Section 10(b) instructs that:
 
 
 17
 The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments ... in a court of competent jurisdiction.
 
 
 18
 5 U.S.C. Sec. 703 (1988). In other words, unless Congress specifically maps a judicial review path for an agency, review may be had in federal district court under its general federal question jurisdiction, 28 U.S.C. Sec. 1331. See Abbott Laboratories v. Gardner, 387 U.S. 136, 140-41, 87 S.Ct. 1507, 1511-12, 18 L.Ed.2d 681 (1967).
 
 DISCUSSION
 
 19
 At the heart of this jurisdictional dispute is a debate over the effect of Congress's decision, in 1975, to redirect challenges to ICC regulations from three-judge district courts to the courts of appeals. Despite the complicated braid of statutory provisions pertaining to FHWA review, our task is quite straightforward. We need not surmise why Congress did not expressly include the FHWA in the Hobbs Act. We need only decide whether the bond section 1653(c) forged in 1966 between judicial review procedures for the ICC and the FHWA weathered Congress's alteration of ICC review procedures in 1975.
 
 
 20
 The district court held, for a number of reasons, that the 1975 amendments terminated the linkage between the ICC's and FHWA's judicial review provisions. The district court concluded that it had jurisdiction over the case under section 10(b) of the Administrative Procedure Act, 5 U.S.C. Sec. 703, and under its general federal question and commerce jurisdiction. On appeal, Owner-Operators press this court to follow the district court's reasoning and hold that jurisdiction does not rest with the court of appeals. We decline to do so.
 
 
 21
 A. The Bond Forged Between ICC and FHWA Review by Section 1653
 
 1. The Text of Section 1653(c)
 
 22
 In holding that the review of FHWA regulations no longer shadowed the ICC's review procedures, the district court found influential the fact that 28 U.S.C. Sec. 2342 specifically states which agency's orders are subject to direct review in the court of appeals. Department of Transportation and FHWA motor carrier safety regulations are not included in this list.[4]
 
 
 23
 The plain language of section 1653(c) dictates the outcome of this jurisdictional dispute. Section 1653(c) instructs that "orders and actions" of the Secretary of Transportation and the Administrator of the FHWA pertaining to motor carrier safety and to the qualifications of commercial drivers "shall be subject to judicial review to the same extent and in the same manner" as ICC actions. Since 1975, ICC orders have been subject to direct review in the courts of appeals. If the FHWA's drug testing regulations are to be reviewed "in the same manner" as ICC regulations, they must likewise be subject to direct review in the courts of appeals.
 
 
 24
 Nothing in the text of section 1653(c) suggests that the linkage between ICC and FHWA judicial review was meant to self-destruct upon the first alteration of ICC review procedures. Indeed, the language is sufficiently capacious to accommodate evolution in the ICC's judicial review scheme.
 
 
 25
 Congress's subsequent actions, moreover, confirm that the ICC/FHWA connection did not expire in 1975. In 1976, Congress amended section 1653(c) to exclude from its scope certain regulatory powers exercised by the Secretary.[5] Of course, if as of 1975, judicial review of regulations issued by the Secretary of Transportation and the Department's administrators no longer tracked ICC review, this amendment would have been wholly unnecessary.
 
 
 26
 Our conclusion is consistent with the canons of statutory construction. "Congress must be presumed to have known of its former legislation ... and to have passed the new laws in view of the provisions of the legislation already enacted. These statutes must be construed together and effect given to all of them." St. Louis, I.M. & S. Ry. v. United States, 251 U.S. 198, 207, 40 S.Ct. 120, 122, 64 L.Ed. 225 (1920). We thus must assume that Congress was fully cognizant of section 1653(c) in 1975 and that it enacted the Hobbs Act in light of its provisions and with the intent that the statutes be construed together. Under these circumstances, including the FHWA in the Hobbs Act list would have been redundant. Section 1653(c) already accomplished that.
 
 
 27
 Owner-Operators argue that the district court's judgment was correct because interpreting 28 U.S.C. Sec. 2342(5) to include the FHWA's motor carrier safety regulations would violate the rule against strict construction of jurisdictional statutes and amount to impermissible judicial legislation. Given the ongoing validity of section 1653(c), however, these concerns about judicial legislation are misplaced. In holding that review of FHWA regulations should take place in the appeals courts, we are not entrenching upon Congress's right to define the federal courts' jurisdiction. Quite the contrary, we are simply giving effect to existing jurisdictional legislation by reconciling section 1653(c) with the changes worked by the Hobbs Act. We do not have to import the FHWA into 28 U.S.C. Sec. 2342. Congress already did that when, in 1975, it left section 1653(c) in the statute books. The question, after all, is not whether section 2342, by its plain terms, encompasses the FHWA. It does not. The question, rather, is whether section 1653(c) still means what it says: are the FHWA and ICC review procedures still parallel? In holding that they are, we do no more than recognize that, as Congress is charged with establishing federal court jurisdiction, so also is it responsible for abolishing jurisdiction.[6]
 
 2. Repeal by Implication
 
 28
 The district court concluded, in effect, that the Hobbs Act repealed section 1653(c) by implication. In other words, Congress's failure specifically to include the FHWA in the Hobbs Act effectively divorced the review of FHWA regulations from the ICC's procedures. But " '[w]hen there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation.' " Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 808, 96 S.Ct. 1236, 1242, 47 L.Ed.2d 483 (1976) (quoting Rosencrans v. United States, 165 U.S. 257, 262, 17 S.Ct. 302, 304, 41 L.Ed. 708 (1897)). Nothing in the language of the Hobbs Act suggests that Congress intended to sever the ICC/FHWA bond cemented by section 1653(c). To conclude that section 1653(c) was repealed by implication, therefore, we must find that the two statutes are irreconcilable. Colorado River, 424 U.S. at 808, 96 S.Ct. at 1241 ("In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." (quoting Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974))).
 
 
 29
 The two statutory provisions are, however, quite compatible. As noted earlier, the text of section 1653(c) does not straitjacket FHWA review into the ICC's 1966 frame. The phrase "to the same extent and in the same manner" admits of no inherent time limits. Thus, as the First Circuit recently noted, "the literal language of 49 U.S.C.App. Sec. 1653(c) permits us to read it as accommodating the change that Congress made in respect to all ICC orders in 1975 when it abolished three-judge court review." Cousins v. Secretary of the United States Dep't of Transp., 880 F.2d 603, 611 (1st Cir.1989) (en banc ); see also Schuler v. Federal R.R. Admin. of the United States Dep't of Transp., 404 F.Supp. 920, 921 (S.D.N.Y.1975) (noting that "Congress would not have intended to cast" section 1653(c)'s judicial review provision "... in a rigid historical mold").
 
 3. Review by a Three-Judge Court
 
 30
 Consideration of the alternative to affording FHWA regulations review in the courts of appeals buttresses our holding. At a minimum, section 1653(c) requires that FHWA orders be reviewed in the same manner as ICC orders were reviewed in 1966; that is, by a three-judge district court. If Congress did not intend for section 1653(c) to evolve with changes in ICC review, then the provision must have frozen in place the 1966 review procedure and, consequently, FHWA regulations must continue to this day to be subject to review by three-judge district courts.
 
 
 31
 To saddle section 1653(c) with such an interpretation would fly in the face of the congressional purpose underlying the Hobbs Act. Congress intended, in 1975, to end three-judge district court review of agency orders and actions. H.Rep. No. 1569, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 7025, 7026.[7] Congress noted that three-judge review, with a right of direct appeal to the Supreme Court, laid "an unnecessary burden upon Federal judicial resources, both at the district and circuit and Supreme Court levels," and "impose[d] upon already-strained judicial personnel and material." Id. at 7026, 7028. Congress expected that, by revamping ICC review procedures, it would eliminate entirely what it considered to be an outdated scheme of agency review. Id. at 7026 (The ICC "is the only remaining Federal agency whose decisions are routinely reviewed by statutorily impaneled three-judge courts with expedited appeal to the Supreme Court as a matter of right.") Resurrecting three-judge court review for FHWA regulations thus would thwart an important Congressional objective, and would do so for no real purpose, since the language of section 1653 does not compel such a result.
 
 
 32
 The district court concluded that neither the appeals court nor a three-judge court is the proper forum for review. It held that parties are free to challenge FHWA regulations in federal district court, under the provisions of the Administrative Procedure Act and the court's general federal question and commerce jurisdiction.
 
 
 33
 The difficulty with this reasoning is that section 1653(c) and the link it forges between ICC and FHWA judicial review are still operative law. Congress's failure to reaffirm this connection when it repaved the path of ICC review in 1975 does not entitle this court to ignore the statute's express command or to treat section 1653(c) as a jurisdictional Rorschach from which parties may discern their own preferred paths of judicial review.[8] Only "a firm indication that Congress intended to locate initial [Administrative Procedure Act] review of agency action in the district courts" will supplement courts of appeals review. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 745, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (emphasis added).
 
 
 34
 B. Section 1653(c) As a Jurisdictional Statute
 
 
 35
 In support of the district court's judgment, Owner-Operators argue that 49 U.S.C. Sec. 1653(c) does nothing more than preserve the right to judicial review.[9] Thus, even if section 1653(c) is currently applicable, it is not, in their opinion, a jurisdictional statute. We disagree.
 
 
 36
 Were the preservation of judicial review all Congress intended to accomplish through section 1653(c), it could have ended the section with the statement that the Secretary's and Administrator's orders and actions "shall be subject to judicial review." Congress deliberately went further, however. It carefully constrained the character and format of the judicial proceedings, commanding that the manner of review imitate that afforded ICC regulations.
 
 
 37
 Owner-Operators point to the second sentence of section 1653(c) to argue that this section was intended to preserve procedural rights rather than to create jurisdiction. The second sentence provides:
 
 
 38
 Any statutory requirements relating to notice, hearings, action upon the record, or administrative review that apply to any function transferred by this chapter shall apply to the exercise of such functions by the Secretary or the Administrators.
 
 
 39
 49 U.S.C. Sec. 1653(c).
 
 
 40
 This argument mixes apples and oranges. The second sentence of section 1653(c) concerns the intra-departmental procedures that the Secretary and the Administrator must follow in promulgating regulations. It does not speak to the process for external (that is, judicial) review of regulations. This sentence and the judicial review provision thus serve distinctly different purposes. See H.Rep. No. 1701, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 3362, 3380, 3389.
 
 
 41
 C. Section 1653's Specific Jurisdictional Assignment
 
 
 42
 Owner-Operators argue next that, even if section 1653(c) is jurisdictional, its assignment of judicial review to the courts of appeals is outweighed by the jurisdictional provisions attaching to sections 104 and 2505(a) of Title 49, the other two sources of regulatory authority underlying the drug testing program. Regulations promulgated pursuant to sections 104 and 2505(a), unlike those issued under section 3102, do not fall within the compass of section 1653(c). As a result, they are reviewable in district court under section 10(b) of the Administrative Procedure Act.[10] Two statutory provisions permitting district court review should, they suggest, outweigh one mandating court of appeals review.
 
 
 43
 The district court properly rejected this argument. "The courts uniformly hold that statutory review in the agency's specially designated forum prevails over general federal question jurisdiction in the district courts." Media Access Project v. Federal Communications Comm'n, 883 F.2d 1063, 1067 (D.C.Cir.1989). Specific grants of exclusive jurisdiction to the courts of appeals override general grants of jurisdiction to the district courts. Connors v. Amax Coal Co., 858 F.2d 1226, 1231 (7th Cir.1988). A contrary holding would encourage circumvention of Congress's particular jurisdictional assignment. It would also result in fractured judicial review of agency decisions, with all of its attendant confusion, delay, and expense. General Elec. Uranium Mgmt. Corp. v. United States Dep't of Energy, 764 F.2d 896, 903 (D.C.Cir.1985). See also Denberg v. United States R.R. Retirement Bd., 696 F.2d 1193, 1196 (7th Cir.1983), cert. denied, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984).
 
 
 44
 In support of their position, Owner-Operators raise the specter of agency forum-shopping through pretextual invocation of statutory authority. We need note only that this is not such a case. Section 3102 of 49 U.S.C. permits the FHWA to prescribe qualifications for commercial drivers. Categorizing abstinence from drug use as a driver "qualification" hardly requires a procrustean interpretation of the term. Indeed, this is not the first time the FHWA has regulated the physical qualifications of drivers pursuant to section 3102. See Laws v. Calmat, 852 F.2d 430 (9th Cir.1988) (drug testing regulations); Costner v. United States, 555 F.Supp. 146 (E.D.Mo.1982), rev'd on other grounds, 720 F.2d 539 (8th Cir.1983) (regulations pertaining to epilepsy). We trust, moreover, that if the need presents itself, courts of appeals will prove equal to the task of sifting out pretextual invocations of their jurisdiction.
 
 
 45
 D. Section 1653(c) and Constitutional Challenges to FHWA Regulations
 
 
 46
 Owner-Operators assert lastly that section 1653(c) does not apply when parties challenge the constitutionality of regulations as opposed to the procedures followed in their promulgation.
 
 
 47
 We cannot agree. Nothing in the language of section 1653(c) or its legislative history warrants amputating such a substantial part of the appellate courts' jurisdiction. Courts should strictly construe jurisdictional statutes. See Arizona State Dep't of Pub. Welfare v. Department of Health, Educ. and Welfare, 449 F.2d 456, 463 (9th Cir.1971), cert. denied, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Accordingly, we are not at liberty to excise an entire class of cases from a jurisdictional grant absent some indication that Congress so intended.[11]
 
 CONCLUSION
 
 48
 Challenges to motor carrier safety regulations must be filed with the courts of appeals, rather than with the district courts. Accordingly, the district court's decision is hereby REVERSED and the case REMANDED to the district court for dismissal or transfer to this court.
 
 
 
 [1]
 Under these statutes, the FHWA may promote highway safety by prescribing physical qualifications and requirements for the drivers of commercial motor vehicles
 
 
 [2]
 Owner-operators are independent contractors who lease their own trucks and transportation services to carriers
 
 
 [3]
 In 1983, Congress recodified Title 49, so that the Department's current authority to regulate motor carrier safety arises under 49 U.S.C. Sec. 3102(b) (1988). The parties do not contend that this recodification in any sense diminished the authority of the Department of Transportation. Indeed, Congress specifically stated that this recodification was intended to "restate, without substantive change, laws enacted before November 15, 1982." Act of Jan. 12, 1983, sec. 6(a), Pub.L. No. 97-449, 96 Stat. 2443 (1983)
 
 
 [4]
 Section 2342(3)(A) does provide direct court of appeals review for orders of the Secretary of Transportation issued pursuant to various provisions of the Shipping Act, 46 U.S.C. app. Secs. 802, 803, 835, 839, 841a (1988)
 
 
 [5]
 "This subsection shall not apply to functions, powers, and duties transferred to the Secretary from the Interstate Commerce Commission under sections 1655(e)(1) through (4) and (6)(A) of this title." 49 U.S.C. app. Sec. 1653(c). These provisions covered generally the regulation of (i) safety appliances and equipment on railroads, and the protection of railroad employees and travelers; (ii) employee hours of service; (iii) medals for heroism; and (iv) explosives
 
 
 [6]
 That almost every other court to consider this jurisdictional issue has ruled in favor of court of appeals review reinforces our holding. We find especially persuasive the recent decision of the First Circuit in Cousins v. Secretary of the United States Dep't of Transp., 880 F.2d 603 (1st Cir.1989) (en banc ). The First Circuit reasoned, as we do, that the link established between ICC and FHWA review procedures survived the 1975 enactment of the Hobbs Act. Id. at 611. District courts considering this issue have concluded likewise. See Center for Auto Safety v. Skinner, No. 90-0096, slip op. (D.D.C. May 31, 1990) (memorandum-order granting motion to dismiss); Oil, Chem. and Atomic Workers v. Skinner, 724 F.Supp. 1264, 1266 (N.D.Cal.1989); White v. Department of Transp., No. IP 81-471-C, slip op. at 2-3 (S.D.Ind. Mar. 30, 1983); Schuler v. Federal R.R. Admin. of the United States Dep't of Transp., 404 F.Supp. 920, 921 (S.D.N.Y.1975)
 Owner-Operators refer us to cases where district courts have adjudicated challenges to various Department of Transportation regulations. See Costner v. United States, 555 F.Supp. 146 (E.D.Mo.1982), rev'd on other grounds, 720 F.2d 539 (8th Cir.1983); Whalen v. Volpe, 348 F.Supp. 1235 (D.Minn.1972), vacated, 379 F.Supp. 1143 (D.Minn.1973). Neither of these cases considered the question of the court's jurisdiction, however. Laws v. Calmat, 852 F.2d 430 (9th Cir.1988), also cited by Owner-Operators, is simply off point. Laws was a suit by an employee against a private employer. The employer invoked a Department of Transportation regulation in order to argue preemption of the state law provision providing the genesis for the lawsuit. As neither party challenged the validity of "orders and actions" of the Secretary of Transportation or of an Administrator, Sec. 1653(c), by its own terms, did not apply.
 It is also worth noting that several courts of appeals have reviewed Department of Transportation regulations in the first instance. See International Bhd. of Teamsters v. United States, 735 F.2d 1525 (D.C.Cir.1984); Professional Drivers Council v. Bureau of Motor Carrier Safety, 706 F.2d 1216 (D.C.Cir.1983).
 
 
 [7]
 Three-judge district courts may still be convened for certain other purposes, however. See 28 U.S.C. Sec. 2284(a) (1988)
 
 
 [8]
 The Administrative Procedure Act, which Owner-Operators cite as supporting district court jurisdiction, actually favors appellate court review. Section 10(b) directs parties to pursue first any "special statutory review proceeding relevant to the subject matter in a court specified by statute," before attempting to invoke a district court's general subject matter jurisdiction. 5 U.S.C. Sec. 703. As the First Circuit recently observed, the Administrative Procedure Act simply points us back to section 1653(c). Cousins, 880 F.2d at 611-12
 
 
 [9]
 The district court did not expressly adopt this argument, although the court noted that it was "not entirely persuaded" that section 1653(c) had jurisdictional effect
 
 
 [10]
 Because it does not affect the outcome of this case, we will not decide the correctness of the parties' and district court's assumption that section 1653(c) does not reach challenges to regulations issued under sections 104 and 2505(a). We assume, for purposes of argument only, that they are correct
 
 
 [11]
 The cases relied upon by Owner-Operators are inapposite. First Commodity Corp. v. Commodity Futures Trading Comm'n, 644 F.Supp. 597 (D.Mass.1986) and Roadway Express, Inc. v. Brock, 624 F.Supp. 197 (N.D.Ga.1985), aff'd. in part, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), both dealt with the rare situation in which parties challenged the constitutionality of the agencies' enabling statutes. Owner-Operators have not levelled such a charge. Consequently, we need not decide here whether Sec. 1653(c) applies in such circumstances